**Roger L.A. JACKSON, an individual, and Phoebe Jackson, an individual, Plaintiffs,**

v.

**TRAVELERS INSURANCE COMPANY, d/b/a Travelers Property Casualty Company, a member of the Travelers Group, also d/b/a the Travelers Indemnity Company and the Aetna Casualty and Surety Company, a member of the Travelers Group, Defendants.**

No. 4–98–CV–90151.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 20, 1998.

As Amended Dec. 24, 1998.

Marc A. Humphrey, Des Moines, IA, for Plaintiffs.

F. Richard Lyford, Dickinson, Mackaman Tyler & Hagen, Des Moines, IA, for Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS, IN PART, DENYING IN PART

PRATT, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss. Plaintiffs Roger and Phoebe Jackson originally filed their Complaint in the Iowa District Court for Polk County alleging insurance bad faith, loss of consortium, intentional infliction of emotional distress, and a claim for punitive damages against Defendants Travelers Insurance, et al. ("Travelers"), based on Defendants' handling of a workers' compensation claim filed by Mr. Jackson. Defendants removed the case to this Court and then filed their Motion to Dismiss. After Plaintiffs' Response and Defendants' Reply were submitted, a hearing was held on the Motion.

Defendants ask this Court to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED in part, and DENIED in part.

## I. Background [1]

Plaintiff Roger Jackson, a citizen of Nebraska, was employed by the J.W. Brewer Tire Company ("J.W. Brewer"), a Colorado corporation doing business in Nebraska. On February 19, 1993, Mr. Jackson suffered an injury at work while using an air-powered dolly to lift large truck tires. One of the tires fell off and the air pressure caused the platform of the dolly to fly upward and strike Mr. Jackson on the neck and chin. As a result of the accident, he sustained multiple injuries, both physical and emotional. Mr. Jackson filed a workers' compensation claim in Nebraska against J.W. Brewer, and he initiated a products liability action in Nebraska against the manufacturer of the dolly.

J.W. Brewer carried workers' compensation insurance through Defendant Travelers, a Connecticut corporation doing business in Iowa. During the "claims adjusting" process, in which Travelers determined the approved medical benefits and the amount to be paid under the workers' compensation policy in settlement of Mr. Jackson's claim, there were telephone conversations and written correspondence between Travelers' agents and the Jacksons or their attorney. All of the calls and letters traveled between the Jacksons or their attorney in Nebraska and Travelers' representatives in Iowa. All checks issued to, or on behalf of, Mr. Jackson were drafted by Travelers in Iowa. Additionally, all authorization of and payment for medical treatment came from the Travelers office in Iowa.

As a result of the delay and denial of treatment and benefits during the adjusting process, Mr. Jackson suffered injuries including: permanent impairment of Mr. Jackson's physical and emotional recovery from

---

1. The allegations of the complaint must be liberally construed in the light most favorable to the plaintiff. *See* discussion and cases cited *infra* Section IV: Standard of Review for 12(b)(6) Motion to Dismiss. The background is presented with this standard in mind.

the work-related injury, permanent impairment of the Jacksons' credit rating, permanent impairment of Mr. Jackson's ability to trust others, permanent impairment of Mr. Jackson's self-confidence and self-esteem, and deterioration of Mr. Jackson's mental and emotional health, including having suicidal tendencies.

In addition, the Jacksons were thwarted in the pursuit of their third-party products liability tort action by Travelers' failure to promptly investigate Mr. Jackson's workers' compensation claim and their failure to take possession of the air-powered dolly.

## II. Jurisdiction

▉▉▉ Defendants' 12(b)(1) defense must be addressed at the outset because jurisdictional issues, whether raised *sua sponte*[2] or by motion, are a barrier to a court's further consideration of the substantive issues in a case. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S.(7 Wall.) 506, 514, 19 L.Ed. 264 (1868)) (remanded with instructions to direct that complaint be dismissed).

In their Motion to Dismiss Defendants allege that Plaintiffs' Complaint should be dismissed under Rule 12(b)(1), but do not specify why they believe the Court is without jurisdiction, nor do they discuss the issue in their supporting Memorandum. This argument is without merit. Upon review of Defendant's First Amended Notice of Removal, the Court finds there is complete diversity among the parties and the amount in controversy is over $75,000. The Court thus believes that it properly has subject matter jurisdiction under 28 U.S.C. § 1332(a).

The Court also believes that it has personal jurisdiction over Defendants. While all Defendants are Connecticut corporations with their principal places of business in Connecticut, by operating an office in West Des Moines, Iowa, through which Travelers adjusts claims in workers' compensation cases, Defendants have purposefully established minimum contacts within the forum state such that the assertion of personal jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). Finally, venue is proper under 28 U.S.C. § 1391(a)(2), Plaintiffs have standing,[3] and the case is ripe and is not moot. Defendants' Motion to Dismiss based on 12(b)(1) is therefore DENIED.

## III. Conflict of Laws[4]

▉▉▉ Defendants also assert that Plaintiffs' action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). As a preliminary matter, however, the parties disagree as to whether Iowa or Nebraska law should control the resolution of the substantive legal issues. "A district court, sitting in diversity, must follow the choice-of-law approach prevailing in the state in which it sits." *Dorman v. Emerson Elec. Co.,* 23 F.3d 1354, 1358 (8th Cir.1994) (citing *Birnstill v. Home Sav. of Amo,* 907 F.2d 792, 797 (8th Cir.1990). In deciding choice of law questions, however, a court must first determine the nature of the causes of action, *see Drinkall v. Used Car Rentals, Inc.,* 32 F.3d 329, 331 (8th Cir.1994) (citing *O'Neal v. Kennamer,* 958 F.2d 1044, 1046 (11th Cir.1992)), because a state may have adopted different choice of law approaches depending on the nature of the claim. Second, a court must decide whether there is any conflict or differ-

---

**2.** As a court of limited jurisdiction, this Court has a duty to assure itself that it has subject matter jurisdiction in every case. *See Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

**3.** *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (explaining that on a motion to dismiss the court presumes general allegations of injury embrace the specific facts that are necessary to establish standing).

**4.** At the outset this Court notes that the method of analyzing conflict questions at the federal trial court level is somewhat murky outside of the clear understanding that the forum state's choice of law principles apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, it seems that there are certain steps that a federal district court needs to take before engaging in its analysis under the forum state's particular choice of

ence between the state laws regarding the claims presented.[5] *See Phillips v. Marist Soc'y,* 80 F.3d 274, 276 (8th Cir.1996) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.") (quoting *Barron v. Ford Motor Co. of Canada, Ltd.,* 965 F.2d 195, 197 (7th Cir.1992) (Posner, J.), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992)). Third, a court must identify the applicable choice of law principles of the forum state, and finally, apply those principles to decide which state's law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).

### A. Nature of the Claims

The first step in deciding a choice of law question is to determine the nature of the causes of action that are involved. *See Drinkall,* 32 F.3d at 331. The law of the forum state, in this case Iowa, controls this question. *Id.* In their Complaint, Plaintiffs allege insurance bad faith, loss of consortium, and intentional infliction of emotional distress. In addition, they bring a claim for punitive damages. These claims all stem from Defendants' handling of Mr. Jackson's workers' compensation claim against his then-employer J.W. Brewer. Specifically, Plaintiffs allege that Defendants, as the workers' com-

law approach. *Cf. Nesladek v. Ford Motor Co.,* 46 F.3d 734, 736 (8th Cir.1995) (deciding whether there was a conflict between the state laws at issue before setting forth and applying the forum state's choice of law rules). This Court has divided its entire analysis into four steps, outlined *infra,* for clarity. *See* fn. 9 *infra* for comments on the steps a court should take once it is engaged in its analysis under the forum state's choice of law principles, in this case, under the Second Restatement.

**5.** Other courts have expressed this idea as determining whether a "true conflict" exists. *See e.g. Nesladek v. Ford Motor Co.,* 46 F.3d 734, 736 (8th Cir.1995); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.,* 23 F.Supp.2d 974, 1001 (N.D.Iowa 1998); *Corsica Coop. Ass'n v. Behlen Mfg. Co., Inc.,* 967 F.Supp. 382, 384 (D.S.D. 1997). This Court finds the "true conflict" language unnecessarily confusing. Coined by Brainerd Currie, "true conflict" is a term of art from his "government interest analysis" method of solving choice of law problems, representing the situation where more than one state was found to have an interest in the application of its own law. *See* Brainerd Currie, *Notes on Methods and Objectives in the Conflict of Laws, in* Selected

pensation insurer for J.W. Brewer, delayed and denied authorization for medical treatment and payment of medical benefits.

Under the law of the forum state, Iowa, all of Plaintiffs' claims of right sound in tort. First, an allegation of first-party insurance bad faith is recognized as a tort claim. *See Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 790 (Iowa 1988), *cited in Stahl v. Preston Mut. Ins. Ass'n,* 517 N.W.2d 201, 202 (Iowa 1994). Second, loss of consortium is a tort separate from that of the injured spouse. *See Huber v. Hovey,* 501 N.W.2d 53, 57 (Iowa 1993). Third, intentional infliction of emotional distress is a clearly recognized tort in Iowa. *See Van Baale v. City of Des Moines,* 550 N.W.2d 153, 156 (Iowa 1996). Since Iowa case law holds that Plaintiffs' claims of right are torts, if a true conflict exists, the Court will apply tort choice of law rules.[6] The claim for punitive damages is a claim for remedy. *See Lala v. Peoples Bank & Trust Co.,* 420 N.W.2d 804, 807 (Iowa 1988) ("Punitive damages are ... incidental to the main cause of action and are not recoverable as of right.") (citation omitted). If a conflict exists with regard to this claim, the Court will apply choice of law rules for damages.

### B. Existence of a Conflict

The second step in deciding a choice of law question, after determining the nature of the claim, is for the Court to decide whether a

Essays on the Conflict of Laws 177–87 (1963). This Court does not use the term "true conflict" for two reasons. First, since many states use either the First Restatement's lex loci doctrine or the Second Restatement's "most significant relationship" test instead of interest analysis when deciding choice of law questions, a district court's use of a term from one method before it begins its analysis under another method is only confusing. Second, even though, as noted *infra* at n. 19, the Second Restatement, applied in Iowa, incorporates some interest analysis rules, Currie used the term "true conflict" to represent the situation where more than one state was found, after factual analysis, to have an interest in the application of its own laws. The term did not represent a threshold legal determination of dissimilarity or disagreement between the laws in question. Therefore, this Court uses the term "conflict" or "difference" to indicate the situation where two or more laws are contradictory to each other. When there is no conflict or difference between the laws, then the law of the forum applies without a choice of law analysis being necessary. *See Phillips v. Marist Soc'y,* 80 F.3d 274, 276 (8th Cir.1996).

**6.** *See World Plan Executive Council v. Zurich Ins. Co.,* 810 F.Supp. 1042, 1045 (S.D.Iowa 1992).

conflict exists.[7] *See Nesladek v. Ford Motor Co.,* 46 F.3d 734, 736 (8th Cir.1995), *cert. denied,* 516 U.S. 814, 116 S.Ct. 67, 133 L.Ed.2d 28 (1995). In this case, there is a difference between the laws of Iowa and Nebraska with regard to the insurance bad faith claim. Under Nebraska law, a common-law bad faith tort claim cannot be maintained against an insurer of a workers' compensation policy. *See Ihm v. Crawford & Co.,* 254 Neb. 818, 824–25, 580 N.W.2d 115, 119 (1998) (holding that the penalty provisions of § 48–125(1) of the Nebraska Workers' Compensation Act exclude the possibility of recovery in tort against an insurer for delay in authorizing or paying for medical expenses). Under Iowa law, however, a first-party bad faith tort claim *can* be brought against a workers' compensation insurance carrier. *See Boylan v. American Motorists Ins. Co.,* 489 N.W.2d 742, 744 (Iowa 1992) (stating that penalty provisions of § 86.13 of Iowa Workers' Compensation Act not intended as sole remedy for all wrongful conduct).

There also exists a conflict of laws over the loss of consortium claim. Both Nebraska and Iowa have held that the spouse of an injured employee cannot maintain a cause of action for loss of consortium unless the employee has a cause of action outside of the exclusive remedy provisions of the applicable workers' compensation statute. *See Johnston v. State,* 219 Neb. 457, 465, 364 N.W.2d 1, 6 (1985) ("[I]f the injured employee does not have an independent cause of action, the injured employee's spouse cannot maintain an independent cause of action."); *Garien v. Schneider,* 546 N.W.2d 606, 609 (Iowa 1996) ("We held ... that the exclusive-remedy provisions of the workers' compensation act apply to consortium claims by spouses and children ... however, ... this is only true if the employer is entitled to invoke the exclusive-remedy doctrine against the employee." (citation omitted)). Applying this rule to the instant case, the Court finds below that while neither state has specifically ruled whether the spouse of an injured employee can maintain a loss of consortium claim against a

workers' compensation insurer, Nebraska and Iowa laws would provide conflicting results on this issue.

As discussed above, Nebraska has decided that an injured employee cannot bring an independent common-law bad faith tort claim against a workers' compensation insurer. *See Ihm,* 254 Neb. at 824–25, 580 N.W.2d at 119. Applying *Johnston,* this Court believes that Nebraska would not recognize a loss of consortium claim by an injured employee's spouse against the insurer when the injured employee cannot maintain an independent action at law against the insurer, and therefore would not recognize Mrs. Jackson's cause of action.

Iowa, on the other hand, has decided that "the exclusive remedy provision of our workers' compensation act is applicable only to claims against the employer and does not extend to the employer's compensation insurer." *Boylan,* 489 N.W.2d at 743–44. An application of *Garien* leads this Court to believe that Iowa would recognize a loss of consortium claim by an injured employee's spouse against the insurer because the injured employee can maintain an independent action at law against the insurer. Under Iowa law, therefore, Mrs. Jackson could maintain a loss of consortium claim.

There is also a difference between the laws of Iowa and Nebraska regarding the intentional infliction of emotional distress claim. The elements of the tort of intentional infliction of emotional distress are similar in both states. Iowa requires: outrageous conduct by the defendant; that defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; that plaintiff suffered severe or extreme emotional distress; and that the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *See Fuller v. United Brotherhood of Carpenters,* 567 N.W.2d 419, 423 (Iowa 1997). The elements under Nebraska law are: intentional or reckless conduct; conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and that the conduct caused emotional distress so severe that no reasonable person should be

7. "A court has to make a choice of law decision in an actual case only ... when the laws of the involved states differ on the point in issue."

Robert A. Sedler, *A Real World Perspective on Choice of Law,* Mercer L. Rev. 781, 783 (1997).

expected to endure it. *See Schieffer v. Catholic Archdiocese,* 244 Neb. 715, 718, 508 N.W.2d 907, 910 (1993). The question in this action, however, is whether there is a difference with regard to the claim of intentional infliction of emotional distress when the claim arises as a result of actions taken by an insurer with regard to a workers' compensation claim.

Under Nebraska law an employer is not liable for intentional torts outside of the provisions of the Nebraska Workers' Compensation Act, *see Ihm,* 254 Neb. at 826, 580 N.W.2d at 120, and an insurer stands in the shoes of the employer, Neb.Rev.Stat. § 48-111. It is this Court's opinion, therefore, that Nebraska would not permit Plaintiffs to maintain their claim for intentional infliction of emotional distress. Iowa, on the other hand, has stated that insurance carriers are not considered "employers" under the exclusivity provision of the Iowa Workers' Compensation Act, and therefore *are* subject to liability for intentional torts. *See Tallman v. Hanssen,* 427 N.W.2d 868, 870 (Iowa 1988), *cited in Kiner v. Reliance Ins.* Co., 463 N.W.2d 9, 12 (Iowa 1990), and *Boylan,* 489 N.W.2d at 743–44. Under Iowa law, therefore, the Court believes that Plaintiffs would be permitted to maintain their intentional infliction of emotional distress claim.

Finally, there is a difference between the laws of Iowa and Nebraska with regard to the right to pursue punitive damages in a civil action. The Nebraska Constitution prohibits punitives, Neb. Const. Art. VII, § 5, *Braesch v. Union Ins. Co.,* 237 Neb. 44, 58, 464 N.W.2d 769, 777 (1991) (citing *Abel v. Conover,* 170 Neb. 926, 929, 104 N.W.2d 684,

688 (1960)), while Iowa has a long history of allowing them, *see generally Wilson v. IBP, Inc.,* 558 N.W.2d 132 (Iowa 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997).[8]

■ Because the three tort claims and the remedy claim present conflicts between Iowa and Nebraska law, the Court must decide which state's substantive law applies to the controversies presented. When jurisdiction is based on diversity of citizenship, a federal district court is bound to apply the choice of law rules of the forum state. *See Klaxon,* 313 U.S. at 496–97, 61 S.Ct. at 1021–22; *Simpson v. Liberty Mut. Ins. Co.,* 28 F.3d 763, 764 (8th Cir.1994) (citing *Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1320 (8th Cir.1991)). This Court thus takes the third step in deciding a conflict of laws question and looks to Iowa to determine its choice of law principles.

### C. Choice of Law Principles of the Forum

■ Plaintiffs bring three tort claims and a damage claim before the Court. Iowa has adopted the Restatement's "most significant relationship"[9] test for resolving conflict of law questions in tort actions.[10] *See Veasley v. CRST Int'l, Inc.,* 553 N.W.2d 896, 897 (Iowa 1996); *Goetz v. Wells Ford Mercury, Inc.,* 405 N.W.2d 842, 843 (Iowa 1987). "The theory behind this approach is that rather than focusing on a single factor, 'the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation.'" *See Veasley,* 553 N.W.2d at 897 (quoting *Fuerste v. Bemis,* 156 N.W.2d 831, 834 (Iowa 1968)).

---

8. It should be noted that in Iowa punitive damages "are not recoverable as a matter of right and are only incidental to the main cause of action" *Sebastian v. Wood,* 246 Iowa 94, 66 N.W.2d 841, 844 (1954), *cited in Giltner v. Stark,* 219 N.W.2d 700, 708 (Iowa 1974), and *cited in Rodgers v. Pennsylvania Life Ins. Co.,* 539 F.Supp. 879, 885 (S.D.Iowa 1982).

9. *See* Restatement (Second) Conflict of Laws, Introduction, § 6 cmt. c, § 145 cmt. 2(1971). One analyst has suggested a five-step method for state courts to follow when applying the Second Restatement: (1) identify and characterize all legal issues; (2) determine whether there is a statutory choice of law directive in the state law on any of the legal issues; (3) identify all factual connections and contacts between the parties, events, and jurisdictions; (4) apply any presumptive rules from the Second Restatement; (5) apply all

relevant choice of law factors to the facts, taking into account the contacts identified in step 3 and the rules identified in step 4. *See* Charles M. Thatcher, *Choice of Law under the Restatement (Second) of Conflict of Laws: A Suggested Analysis Applied to the South Dakota Cases,* 42 S.D.L.Rev. 66, 68–69 (1997). This Court obviously supports a systematic choice of law analysis and finds the author's method clear and thorough. However, because this Court is a federal district court and some of these steps have been taken outside of this Court's Restatement analysis, this Court adopted a different four-step process.

10. Conflict of law questions in claims for damages under a tort action are also evaluated using the "most significant relationship" test. *See Cameron v. Hardisty,* 407 N.W.2d 595, 597 (Iowa 1987); Restatement (Second) of Conflicts §§ 145(1), 171(1971).

The Restatement directs the courts to look first to the statutory choice of law directives of their own state. If there are no applicable directives,[11] the Restatement suggests the courts look to the following general choice of law principles to determine which state has the most interest in the litigants and the outcome:

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability, and uniformity of result, and

 (g) ease in the determination and application of the rule to be applied.

Restatement (Second) Conflict of Laws § 6(2)(1971). In addition, § 145 of the Restatement sets out specific factors to be taken into account in applying the principles of § 6 to tort actions:

 (a) the place where the injury occurred,

 (b) the place where the conduct causing the injury occurred,

 (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

 (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145(2)(1971). A court may take into account principles and factors outside of those listed in §§ 6 and 145, and the weight to be given any specific factor or group of factors will vary depending on the particular case. Restatement (Second) Conflict of Laws § 145 cmt. a (1971).

Having established that Iowa applies the Restatement in determining questions of choice of laws, the Court must engage in the fourth and final step in deciding a.conflict of laws question and apply the forum's choice of laws principles to the conflict at hand. Specifically, the Court must decide which factors to apply to each tort and whether they favor Iowa or Nebraska law on the facts before the Court. As the Restatement suggests, "any rule of choice of law, like any other common law rule, represents an accommodation of conflicting values." Restatement (Second) Conflict of Laws § 6 cmt. c (1971).

## D. Application of Forum's Choice of Law Principles

As the American industrial era progressed, tort remedies based on employer liability proved inadequate to compensate injured employees for work-related injuries; litigation was too expensive for the employee to maintain and it was difficult to prove employer fault or negligence. *See* James R. Lawyer & Judith Ann Graves Higgs, Iowa Workers' Compensation—Law and Practice § 1–1 (1985). In response, states established statutory compensation systems whereby the employee did not have to prove fault, but in exchange, employer liability was limited to statutory amounts.[12] *See* Mark Berger, *Unjust Dismissal and the Contingent Worker: Restructuring Doctrine for the Restructured Employee,* 16 Yale L. & Pol'y Rev. 1,40 (1997). Both Nebraska and Iowa have set up such comprehensive systems for handling workers' compensation claims. *See* I.C.A. §§ 85.1 *et seq.*; Neb.Rev.Stat. §§ 48–101 *et seq.* Both states specify the benefits to be awarded to workers in various situations, both states have penalty provisions for delayed payments, *see* I.C.A. § 86.13; Neb. Rev.Stat. § 148–125(1), and both states have provisions in their respective acts that limit employers' liability exclusively to that which is provided under the statute, *see* I.C .A. § 85.20; Neb.Rev.Stat. § 48–111. For purposes of the instant case, the only differences between Nebraska's and Iowa's workers' compensation laws are in the applicability of the exclusivity provision to insurers and in the interpretation by the courts of the sufficiency of the penalty provisions.

---

**11.** There are no applicable Iowa directives in the instant matter.

**12.** "A compensation system, unlike a tort recovery, does not pretend to restore to the claimant what has been lost; it gives the worker a sum which, added to any remaining earning ability, if any, will presumably enable him or her to exist without being a burden to others." Arthur Larson & Lex K. Larson, Larson's Workers' Compensation § 2.50 (1998).

In Iowa, the exclusivity provision of its workers' compensation act has not been specifically extended to insurers by the legislature. Iowa recognizes a first-party bad faith action against insurers, both in general, *see Dolan*, 431 N.W.2d at 790, and specifically against workers' compensation insurers, *see Boylan*, 489 N.W.2d at 744. The reasons cited in *Dolan* for the adoption of a first-party bad faith tort include: the uneven bargaining power between insured and insurer, the vulnerable position of the insured in negotiations due to physical and economic suffering, the public interest aspects of the insurance industry, and the lack of deterrent for the insurer without the tort (i.e., the cost to the insurer for delay and denial of benefits is only the interest due on the amount owed). *See Dolan*, 431 N.W.2d at 791–92 (citing Mary E. Phelan, *The First Party Dilemma: Bad Faith or Bad Business?*, 34 Drake L.Rev. 1031, 1035–36 (1985)).

In *Boylan* the Court explained that it recognized the first-party bad faith tort claim against compensation insurers because neither the exclusivity provision nor the penalty provision of the Workers' Compensation Act applied to compensation insurers. The independent bad faith act by the insurer did not arise out of the workers' compensation claim, and thus was not subject to the exclusivity provision, *see Boylan*, 489 N.W.2d at 743 (citing *Tallman*, 427 N.W.2d at 870), and neither did the legislature intend the penalty provision of the Act to be the sole remedy for insurer bad faith because of its limited scope, *see Boylan*, 489 N.W.2d at 743. Keeping these policy considerations in mind, the issue for this Court is whether Iowa has sufficient interest in applying its laws in the instant case, where the employer and injured employee are non-Iowans, and the only connection to the state is that the compensation insurer adjusted a Nebraska claim out of its Iowa office.

Applying the principles listed in § 6 of the Restatements to this case, the Court finds that Iowa has a significant interest in having its laws apply to Plaintiffs' claim of insurance bad faith. As mentioned in *Dolan*, there is a public aspect to the insurance industry that is not present in all industries that the state may regulate. *See Dolan*, 431

N.W.2d at 791; *Davenport Osteopathic Hosp. Ass'n v. Hospital Service, Inc.*, 261 Iowa 247, 257, 154 N.W.2d 153, 160 (1967) ("Laws regulating the insurance business are remedial, being enacted under the state's police power, because such business has been found to be impressed with public interest and the public is entitled to protection against unscrupulous and illegal practices.") (citations omitted). Also, Iowa has a legitimate concern that without application of its laws, there will not be a sufficient deterrent for the insurance industry to refrain from acting in bad faith when administering claims in Iowa. *See Dolan*, 431 N.W.2d at 791.

In Nebraska, the exclusivity provision of its workers' compensation act explicitly applies to insurers as well as to employers. *See* Neb.Rev.Stat. § 48–111. In addition, the Nebraska Supreme Court has held generally that the wording of the exclusivity provision limits an insurer's liability to the provisions of the Act, thereby excluding independent tort and contract liability. *See Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). Nebraska *does* recognize the tort of bad faith in first-party cases against insurers in general. *See Braesch*, 237 Neb. at 54, 464 N.W.2d at 775. The Nebraska Supreme Court echoed the policy reasons for recognizing a first-party bad faith tort claim cited by the Iowa Supreme Court: the public interest in the insurance industry; the noncommercial nature of insurance contracts; and the inequity in bargaining power between the insured and the insurer. *See id.* at 51–53, 464 N.W.2d at 774–75. However, the Nebraska Supreme Court has specifically held that as a result of the exclusivity provision and the existence of statutory penalties for bad faith under the Workers' Compensation Act, a workers' compensation insurer is not liable in tort for bad faith. *See Ihm*, 254 Neb. at 824–25, 580 N.W.2d at 119. The court cited Professors Arthur and Lex Larson for the proposition that the presence in the statute of an administrative penalty for the type of conduct at issue in the tort suit is evidence of a legislative intent to exclude the availability of a bad faith tort remedy. *See id.* at 825, 580 N.W.2d at 119–20 (citation omitted). The Court agreed with the Larsons' rhetorical question: "Since when … has it been necessary for compensation acts to compensate claimants fully?" *Id.* (citing 6 Arthur Larson & Lex K. Larson's Workers' Compensation Law, § 68.34(c)(1998)).

Both Iowa and Nebraska obviously have a basic legislative interest in resolving conflicts arising out of or falling under their own workers' compensation systems. However, the Court finds that the instant case is a classic example where the states' policies do not interfere with each other. If one state chooses to compensate injured workers more fully than another state does, the state offering fewer benefits seems to have little interest in denying a worker access to the other system's benefits [13] except in two situations: when the insurer is a citizen of that state or when the employer is a citizen of that state.

Thus for example, if Nebraska limits the rights its citizens can use to recover under the Nebraska workers' compensation system, it should have little interest in limiting a Nebraska plaintiff from recovering additionally under another state's laws, especially when that state, Iowa, has an interest in applying its own laws. Unless the defendant is a Nebraska citizen, it would seem Nebraska has no substantial interest in denying additional benefits. In the instant case, Travelers, although doing business in Nebraska, is not a Nebraska citizen. Presumably, it is not in the interest of the Nebraska legislature to extend protection to all insurance companies nationwide regardless of whether they are Nebraska businesses. The only other situation where Nebraska can be said to have such an interest is if it is seeking to protect Nebraska employers who choose non-Nebraska insurers, especially if one could argue under § 6(d) that Nebraska employers have a justified expectation that their liability and the liability of their insurers will be limited to the Nebraska Act.[14] In this case, however, the J.W. Brewer Company is a Colorado, not Nebraska, corporation, so presumably Nebraska has less interest in

protecting it than if it were a Nebraska corporation.[15] The Court thus finds that Iowa has the most significant relationship to this claim under the § 6 Restatement factors.

After examining the specific factors set forth in § 145 of the Restatement, the Court again concludes that Iowa has the more significant interest in the parties and the outcome of this claim. Under § 145, the factors that courts should consider are: the place where the injury occurred, the place where the injury-causing conduct occurred, the residence and place of business of the parties, and the place where the parties' relationship is centered. Iowa has an interest in this litigation because the injuries alleged, including the impairment of Mr. Jackson's physical and emotional recovery, the impairment of Mr. Jackson's ability to trust others, and his depression, were caused by actions occurring in Iowa. Decisions regarding Mr. Jackson's treatment and benefits were made by Travelers' representatives in Iowa, and telephone calls and letters communicating such decisions were initiated by Travelers representatives in Iowa. It is also true that Travelers does business in Iowa, and the interest of Iowa in regulating business activities that take place within the state and thus may affect the citizens of the state is great. While it is true that the injuries occurred primarily in Nebraska, where Plaintiffs were physically located when they received the calls and letters from Travelers, the majority of the other § 145 considerations point to Iowa as the state with the most significant relationship with the litigation. Therefore, because this Court finds that the § 6 and § 145 factors as set forth in the Restatement indicate that Iowa is the state with the most significant relationship to the first-party bad faith tort claim, Iowa law should apply to this claim.

13. This idea is embodied in § 182 of the Restatement which states that relief may be awarded under the workers' compensation statute of one state even though another state has already issued an award. *See* Restatement (Second) Conflict of Laws § 182, cmt. b. (1971).

14. The liability of insurers is relevant because the unpredictable and extreme awards that juries return against insurers presumably result in higher premiums for Nebraska employers. For example, in 1993, California juries awarded verdicts of $ 425,600,000 and $ 89,320,000 against insurers in bad faith cases, and in Texas a verdict was returned for $ 102,170,000 against an insur-

er that denied a $ 20,000 underinsured motorist claim. Douglas R. Richmond, *An Overview of Insurance Bad Faith Law and Litigation,* 25 Seton Hall L.Rev. 74, 75 (1994) (citations omitted).

15. Although it is possible that Nebraska has some interest in encouraging and protecting all companies engaged in business in the state. However, the Nebraska workers' compensation statute was designed so that expenses would be passed on to the consumer by the employer. *See Kaplan v. Gaskill,* 108 Neb. 455, 187 N.W. 943, 945 (1922) ("The Compensation Act was not intended to impose a charge upon the individual employer, but upon the industry ... in which he is engaged, on the theory that the industry could

■ As seen in the preceding analysis, more than one factor out of those listed in § 6 and § 145 of the Restatement may be relevant to a court's determination of which state's substantive law should be applied to a particular claim. As to Mrs. Jackson's claim for loss of consortium, however, the Court need only examine "the relevant policies of the forum" to decide whether Iowa or Nebraska law applies to Mrs. Jackson's loss of consortium claim. See Restatement (Second) Conflict of Laws § 6(2)(b) (1971). The Supreme Court of Iowa has held that there is no policy reason for extending Iowa's cause of action for loss of consortium to non-Iowa residents. See Berghammer v. Smith, 185 N.W.2d 226, 231–32 (Iowa 1971) (applying a "most significant relationship" test), cited with approval in Cameron v. Hardisty, 407 N.W.2d 595, 597 (Iowa 1987). "[O]nly the [state of plaintiff's residence/citizenship] is concerned with the marital status of plaintiff and the interspousal rights and duties arising therefrom. Iowa has no state interest to protect." Berghammer, 185 N.W.2d at 231. Therefore, according to the relevant policy of the forum state, Iowa has no interest in applying its law since Mr. and Mrs. Jackson reside in, and are citizens of, Nebraska. Nebraska law should apply to the consortium claim.

■ As to Plaintiffs' claim for emotional distress, the conflicting interests can be characterized as Nebraska's interest in maintaining the exclusive remedy provision of its workers' compensation statute such that the intentional infliction of emotional distress claim would be prohibited, versus Iowa's interest in allowing a non-resident to maintain such an intentional tort claim against a company licensed to do business in the state.

The Restatement indicates that it is useful to look to the basic policies underlying the field of law implicated by the interests. See Restatement (Second) Conflict of Laws § 6(2)(e) (1971). Nebraska's interest in maintaining the integrity of its workers' compensation act is significant. As discussed above, workers' compensation statutes were enacted in response to the failure of the tort system to adequately compensate injured workers. States limited employers' liability to the statutory remedies set out in workers' compensation acts in exchange for a no-fault system of recovery. See Arthur Larson & Lex K. Larson, Larson's Workers' Compensation §§ 2.0, 2.10 (1998). In this way Nebraska provides for the welfare of its working citizens. The Supreme Court of Nebraska has stated that the purpose of the Nebraska Workers' Compensation Act is to "do justice" to workers without expensive litigation or unnecessary delay. See Neeman v. Otoe County, 186 Neb. 370, 376, 183 N.W.2d 269, 273 (1971) (citation omitted). Nebraska thus has a clear interest in limiting the ability of Nebraska workers to recover against Nebraska employers in tort so as to maintain a system whereby Nebraska employers provide statutory benefits without undue delay or expense to injured workers. While Nebraska's interest may be more attenuated in the case at bar because Mr. Jackson's claim was not brought against a Nebraska company, but rather against the Connecticut insurer of a Colorado corporation, it is clear that Nebraska still has an interest in maintaining the limited statutory liability of the Workers' Compensation Act as part of the balanced exchange between employers and employees in the state.[16]

bear the loss resulting from personal injuries to its employees, and that the burden could be passed on to the patrons of that industry by charging up such losses to operating expense.").

16. The Court notes that the inclusion of compensation insurers under the exclusivity provisions of the Act can be seen as entirely consistent with the purpose behind granting limited liability to employers. The workers' compensation laws, in order to provide all workers with some measure of benefits, require an exchange—"the employer who is not at fault forfeits a potential immunity while the employee forfeits a claim for full damages in exchange for more modest compensation. Amounts of compensation are fixed and the employer passes on the expenses of compensation to the consumer in the cost of its products and

services." James Lawyer & Judith Higgs, Iowa Workers' Compensation—Law and Practice § 1–1 (1984). As noted earlier, insurers included under such an exclusivity provision can presumably pass on savings to the employer in the form of reduced premiums as a result of being able to better predict potential liability, which would in theory be passed on to the consumer in the form of less expensive goods and services. Nebraska's decision to expand exclusivity to insurers is thus similar to any substantive change to the statutory rights of employers or employees that the legislature might see fit to enact. For instance, the legislature might expand employee rights by increasing the statute of limitations for filing a claim under the Act. The Plaintiffs' claim, as it would be handled in Nebraska, still implicates the policies that encouraged Nebraska to enact workers' compensation laws in the first place.

Iowa's interest in allowing a non-resident to maintain a claim for intentional infliction of emotional distress is less clear. Tort law encompasses goals of both deterrence and corrective justice. *See generally* Gary Schwartz, *Mixed Theories of Tort Law: Affirming Both Deterrence and Corrective Justice*, 75 Tex. L.Rev. 1801 (1997). Presumably Iowa has no particular interest in Plaintiffs as far as corrective justice or victim compensation is concerned because they are not Iowa citizens,[17] and the injury did not occur in Iowa.[18] It seems reasonable, however, for Iowa to be concerned with deterring outrageous behavior on the part of companies doing business in the state. *See* Restatement (Second) Conflict of Laws § 145(2)(c) (1971). Iowa's interest would be related to its connection as the place where the injury causing conduct occurred. *See* Restatement (Second) Conflict of Laws § 145(2)(b) (1971).

 Commentators have suggested the use of comparative impairment as a helpful technique when a court is using interest analysis to decide a conflict of laws problem.[19] *See* Larry Kramer, *Rethinking Choice of Law*, 90 Colum. L.Rev. 277, 323 (1990); David E. Seidelson, *Resolving Choice–of–Law Problems through Interest Analysis in Personal Injury Actions: A Suggested Order of Priority Among Competing State Interests and Among Available Techniques for Weighing Those Interests*, 30 Duq. L.Rev. 869, 878–79 (1992). Comparative impairment reformulates the traditional rule that courts should apply the law of the state with the most significant interest into the rule that courts should apply the law of the state where failure to apply its own laws would most frustrate that state's interests. Using a comparative impairment approach, the Court believes Nebraska law should apply.

Failure to apply Iowa law to Plaintiffs' claim would wholly frustrate Iowa's interest in deterring outrageous conduct. As a matter of law, however, the outrageous behavior that Iowa's tort of intentional infliction of emotional distress proscribes is a very narrow category of behavior. *See Fuller*, 567 N.W.2d at 422 ("Before defendants' conduct can be considered outrageous, it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' ") (citation omitted).

In comparison, failure to apply Nebraska law only partially frustrates Nebraska's interest in regulating workers' compensation actions because only Nebraska's desire to include compensation insurers within its exclusive liability provision is implicated. However, the impact on Nebraska's interest in establishing a cohesive workers' compensation could be considerable. First, Nebraska's Workers' Compensation Act is effective in providing relief to injured workers only if it fully brings employees and employers within its scope. The legislature has expressed a desire to include insurers within the category of employers for purposes of liability, *see* Neb.Rev.Stat. § 48–111, possibly because they realize that leaving insurers liable for torts outside of the provisions of the Act leaves them open to indefinite claims, the cost of which would be passed on to employers through increased premiums, thereby defeating the "bargained for" predictability of the workers compensation system in Nebraska. Also, failure to apply Nebraska law means that insurers would have an incentive to adjust claims only from offices in states that include insurers under their exclusivity provisions. Such strategic behavior on the part of insurers would simply increase administrative costs which again would be passed on to employers.

---

17. "Legislatures usually legislate ... only with the local situation in mind. They rarely give thought to the extent to which the laws they enact ... should apply to out-of-state facts." Restatement (Second) Conflict of Laws § 6 cmt. c (1971).

18. Relying on the factors listed in § 145 of the Restatement, the injury to Plaintiffs occurred primarily in Nebraska, the state where they received the "outrageous" communications from Defendants, either by post or telephone. Plaintiffs were primarily physically located in Nebraska so that any physical or emotional harm resulting from the conduct occurred in Nebraska. *See* Restatement (Second) Conflict of Laws § 145(2)(a) (1971).

19. "The Restatement approach incorporates interest analysis, territoriality, and mechanical conflicts rules." David E. Seidelson, *Resolving Choice–of–Law Problems through Interest Analysis in Personal Injury Actions: A Suggested Order of Priority Among Competing State Interests and Among Available Techniques for Weighing those Interests*, 30 Duq. L.Rev. 869, 914 n. 1 (1992).

Nebraska's interests in the parties and the litigation, specifically, in protecting its workers and the coherence of its workers' compensation system, are greater than Iowa's interest in protecting non-Iowans against outrageous behavior, or deterring outrageous behavior on the part of corporations doing business in Iowa, considering the extremely narrow category of behavior that is prohibited under the law of intentional infliction of emotional distress and the broad effect of workers' compensation laws. The Court therefore holds that Nebraska law applies to this claim.

 The Court now addresses Plaintiffs' claim for punitive damages. Plaintiffs' claim is based on the claim in Count I for insurance bad faith and the claim in Count III for intentional infliction of emotional distress. As noted above, Iowa has adopted the "most significant relationship" test of § 145(1) of the Restatement for resolving conflicts of law in tort actions. *See Veasley,* 553 N.W.2d at 897. According to § 145, the rights *and liabilities* are determined by the state that has the most significant relationship to the occurrence and the parties. *See* Restatement (Second) Conflict of Laws § 145(1) (1971); *Enron Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 312–13 (8th Cir.1991). In § 171, the Restatement states: "The law selected by application of the rule of § 145 determines the right to [punitive] damages." Restatement (Second) Conflict of Laws § 171, cmt. d (1971). Although the Supreme Court of Iowa has not explicitly adopted § 171, nor has it even addressed the issue of punitive damages in a choice of law context, this Court presumes that the "most significant relationship" test would also apply to claims for damages under the bad faith claim in this action. *See Cameron,* 407 N.W.2d at 597.[20]

In reviewing the factors under the "most significant relationship" test, the Court finds that Iowa law should apply to Plaintiffs' puni-

tive damage claim for insurance bad faith. The Court has held above that both the specific factors under § 145 of the Restatement and the policy considerations under § 6 of the Restatement point to Iowa as the state with the most significant relationship to Plaintiffs' bad faith claim. For similar reasons, the Court finds that Iowa law should apply to the punitive damages claim. Iowa was the location of the cause of the injuries to Plaintiffs and Iowa has a significant interest in using punitive damages to punish bad faith conduct that occurs in Iowa. The Iowa Supreme Court has held that "[p]unitive damages are awarded as punishment and as a deterrent to the wrongdoer and others." *See Lala,* 420 N.W.2d at 807. Additionally, the Court finds that the policy reasons underlying the allowance of punitive damages in Iowa further supports the conclusion that Iowa has a more significant interest. Also, Nebraska has no interest in preventing punitive awards from other states to Nebraska citizens. The Court finds that in this action, where Iowa law allows a bad faith claim and Nebraska law does not, Iowa law should apply to the incidental claim for punitive damages.

 Finally, Defendants raise the issue of applicable statutes of limitation. "Because statutes of limitation are usually viewed as being procedural rather than substantive, Iowa courts generally apply the Iowa statutes of limitation regardless of which state's substantive law will govern the case." *Harris v. Clinton Corn Processing Co.,* 360 N.W.2d 812, 814 (Iowa 1985) (citing *Sedco Int'l v. Cory,* 522 F.Supp. 254, 315 (S.D.Iowa 1981), *aff'd,* 683 F.2d 1201 (8th Cir.1982), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982)); *Williams v. Burnside,* 207 Iowa 239, 243–44, 222 N.W. 413, 415 (1928). This approach is consistent with the Restatement. *See Harris,* 360 N.W.2d at 814; *Cameron,* 407 N.W.2d at 596. Neither of the exceptions to statutes of limitations [21] set out in *Cameron* apply here. *Cameron,* 407 N.W.2d at 596. Thus, in deciding Plain-

---

**20.** While Plaintiffs have also brought a claim for punitive damages based on intentional infliction of emotional distress, the Court need not analyze whether Nebraska or Iowa law should be applied to this claim. The Court has already decided that Nebraska law applies to the claim for intentional infliction of emotional distress, and for the reasons set forth in Section V, the claim is dismissed. Thus, there is no remaining controversy with regard to this issue.

**21.** The first exception is found in the application of Iowa's borrowing statute. *See* I.A.C. § 614.7. The second exception is found at common law when the other state's cause of action acts as a bar to the accrual of the cause of action, not merely as a time limit that begins to run after the cause of action accrues.

tiffs' claims below, the Court will apply the appropriate Iowa statute of limitations as determined by the actual nature of the specific cause of action. *See Clark v. Figge,* 181 N.W.2d 211, 213 (Iowa 1970), *cited in Brown v. Liberty Mut. Ins. Co.,* 513 N.W.2d 762, 764 (Iowa 1994).

## IV. Standard of Review for 12(b)(6) Motion to Dismiss

Now that the Court has established that Iowa law should apply to Plaintiffs' claims of insurance bad faith and punitive damages, and that Nebraska law should apply to Plaintiffs' claims for loss of consortium and intentional infliction of emotional distress, the Court evaluates Defendants' Motion to Dismiss. In addressing a motion to dismiss under 12(b)(6), this Court "is constrained by a stringent standard .... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 545–46 (8th Cir.1997) (quoting *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (citation omitted)).

In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes,* 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state a claim, the Court must accept the facts alleged in the complaint as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), *cited in Penn v. Iowa State Bd. of Regents,* 999 F.2d 305, 307 (8th Cir.1993). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established

that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984).

## V. Analysis and Conclusion

In their Reply Brief, Defendants argue that Plaintiffs' claim for insurance bad faith should be dismissed because the Nebraska Supreme Court has held that such an action is unable to be maintained outside of the Nebraska Workers' Compensation Act. However, in Section II above, this Court has held that Plaintiffs' common law bad faith claim is to be decided under Iowa law. The question, therefore, is whether, when construing the Complaint liberally and in the light most favorable to Plaintiffs, sufficient facts have been alleged that allow this Court to conclude that Plaintiffs should be allowed to present evidence on the issue. The Court does not have to believe that Plaintiffs will ultimately prevail. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

Under Iowa law, to successfully maintain an action for first-party insurance bad faith, a plaintiff must prove there is no reasonable basis for denying or delaying payment of benefits and that defendant knew or should have known that there was not a reasonable basis for denying payment. *See Kiner,* 463 N.W.2d at 12; *Thompson v. United States Fidelity and Guar. Co.,* 559 N.W.2d 288, 291 (Iowa 1997). When the question whether a reasonable basis exists is "fairly debatable" an insurer is entitled to debate it without being guilty of bad faith. *See Dirks v. Farm Bureau Mut. Ins. Co.,* 465 N.W.2d 857, 861 (Iowa 1991); *Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92, 96 (Iowa 1995). Whether a claim is fairly debatable is sometimes a question of law for the court and sometimes a question of fact for the jury depending on the facts of the

individual case. *See Thompson,* 559 N.W.2d at 290.

At this stage of the proceedings there has been very little development by either party of the facts relating to the bad faith claim. However, viewing the allegations in the Complaint in the light most favorable to Plaintiffs, it is possible for this Court to conclude that Plaintiffs are entitled to present evidence on this claim. Plaintiffs have alleged that Defendants had no reasonable basis for, among other things: failing to promptly investigate Mr. Jackson's compensation claim, failing to take possession of the allegedly defective machine, denying or delaying payment of compensation benefits, failing to provide continuity of medical care, delaying the provision of medical care, specifically, delaying performance of an independent medical exam and then failing to follow the recommendations generated by that exam, failing to implement a rehabilitation plan despite recommendations, failing to promptly and consistently pay medical bills, failing to treat Mr. Jackson's depression, and failing to follow established in-house communication procedures. Plaintiffs likewise allege that Defendants knew or should have known that Defendants had no reasonable basis for engaging in such acts or omissions.

▮ Defendants raise the issue that even if Plaintiffs have stated a claim for bad faith, the action is barred by the statute of limitations. As discussed above, this Court applies the appropriate Iowa statute of limitation for the specific cause of action at issue. *See Brown,* 513 N.W.2d at 764. The five-year period of limitations found in § 614.1(4) of the Iowa code applies to actions based on bad faith failure to pay workers' compensation benefits brought against the insurer. *See Brown,* 513 N.W.2d at 765. Even using the earliest date alleged, the date *least* favorable to the Plaintiffs, February 19, 1993, the date of Mr. Jackson's injury, this action was brought within five years as it was filed on February 18, 1998. Therefore, accepting the facts in the Complaint as true, Plaintiffs' claim for insurance bad faith can be maintained under Iowa law and is not barred by the appropriate statute of limitations. Defendants' Motion to Dismiss Count I is therefore DENIED.

▮ Having established above that Nebraska law applies to Mrs. Jackson's claim for loss of consortium, there is no set of facts under which she could maintain her claim. The Supreme Court of Nebraska has held that an injured employee's spouse cannot maintain an independent action against an employer unless the injured worker can maintain an independent action against the employer outside of the exclusivity provisions of Nebraska's Workers' Compensation Act. *See Johnston,* 219 Neb. at 465, 364 N.W.2d at 6. The term employer includes the workers' compensation insurer in matters of exclusive liability under the Act. *See* Neb. Rev. St. §§ 48–110, 48–111; *Ihm,* 254 Neb. at 820–21, 580 N.W.2d at 117–18. According to the court, Mr. Jackson, the injured worker, cannot maintain an independent action for insurance bad faith against Travelers, the workers' compensation insurer, *see Ihm,* 254 Neb. at 824–25, 580 N.W.2d at 119, therefore, as a matter of law, his wife cannot maintain her claim for loss of consortium in Nebraska. Defendants' Motion to Dismiss Count II is therefore GRANTED.

▮ Similarly, Plaintiffs cannot maintain their claims for intentional infliction of emotional distress under Nebraska law. Payment of benefits under the Nebraska Workers' Compensation Act has been held to relieve an employer of any tort liability connected to the accident. *Brown v. American Tel. & Tel. Co.,* 252 Neb. 95, 98–99, 560 N.W.2d 482, 485 (1997) (citing *Tompkins v. Raines,* 247 Neb. 764, 767–68, 530 N.W.2d 244, 246 (1995)); *see also* Neb.Rev. Stat. § 48–148. Again, an insurer is included under the term "employer" for the purposes of the exemption from liability provision of the Act. *See* Neb.Rev.Stat. § 48–111. Since Mr. Jackson received workers' compensation benefits, he elected to be covered by Nebraska's Act and is therefore precluded from recovery in tort against both his employer and his employer's workers' compensation insurer, Travelers. Regarding his wife's claim, this Court again applies *Johnston* to hold that if the injured employee cannot maintain an independent action, neither can the employee's spouse. There is no set of facts that could effect this legal analysis required under

Nebraska law. Defendants' Motion to Dismiss Count III is therefore GRANTED.

 Plaintiffs' claim for punitive damages arising out of the insurance bad faith claim can be maintained under Iowa law. Under Iowa law, punitive damages may be awarded when the plaintiff can prove that defendant's conduct amounted to a "wanton and wilful disregard" for the rights of another. I.C.A. § 668A.1. Merely objectionable conduct is insufficient to support an award of punitive damages. *See Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 156 (Iowa 1993) (citation omitted). If a jury finds that an insurer failed to pay benefits in bad faith, punitive damages can be awarded in Iowa. *Cf. Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92, 94 (Iowa 1995) (overturning the jury's verdict on other grounds).

Construing the allegations of the Complaint liberally in favor of the pleader, Plaintiffs are entitled to present evidence on their punitive damages claim. Plaintiffs allege that among other wrongful acts, Defendants failed to treat Mr. Jackson's depression and made various representations to Plaintiffs with regard to Mr. Jackson's health care and rehabilitation plan, then failed to follow through as promised. Either of these very general allegations could encompass behavior on the part of Defendants that could be considered "wanton and wilful" rather than merely objectionable. Defendants' Motion to Dismiss is therefore DENIED.

Counts II and III of Plaintiffs' Complaint, the claim for loss of consortium and the claim for intentional infliction of emotional distress, are dismissed for failure to state a claim. The Court finds that Counts I and IV of Plaintiffs' Complaint, the claims for insurance bad faith and punitive damages, have stated claims for which relief can be granted, and therefore survive Defendants' Motion to Dismiss. Defendants' Motion is GRANTED in part, DENIED in part.

This Court is of the opinion that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

IT IS SO ORDERED.