# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-3595EA, 99-3601EA, 99-4218EA

_____

| | | |
|---|---|---|
| _____ | * | |
| | * | |
| No. 99-3595EA | * | |
| _____ | * | |
| | * | |
| Willie Mae Young, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| City of Little Rock, a Public Body | * | |
| Corporate, | * | On Appeal from the United |
| | * | States District Court |
| Appellant. | * | for the Eastern District |
| | * | of Arkansas. |
| | * | |
| _____ | * | |
| | * | |
| No. 99-3601EA | * | |
| _____ | * | |
| | * | |
| Willie Mae Young, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| City of Little Rock, a Public Body | * | |
| Corporate; James Brown, Badge | * | |

Number 16781, Little Rock Police
Department, in his individual capacity;
Robert Haggard; and Shirley Shook,
in her individual capacity,

        Appellees.

—————————

        No. 99-4218EA

—————————

Willie Mae Young,

        Appellee,

        v.

City of Little Rock, a Public Body
Corporate,

        Appellant.

On Appeal from the United States District Court for the Eastern District of Arkansas.

—————————

Submitted:  December 15, 2000
Filed:  May 2, 2001

—————————

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD and HANSEN, Circuit Judges.

—————————

RICHARD S. ARNOLD, Circuit Judge.

A jury awarded Willie Mae Young $100,000 in her 42 U.S.C. § 1983 action arising out of her arrest and detention by the City of Little Rock Police Department. Ms. Young and the City cross-appeal, each challenging various aspects of the District Court's[1] final judgment. We affirm in all respects.

## I.

A car in which Ms. Young was a passenger was stopped for a minor traffic violation by Little Rock Police Officer James Brown at about 3:30 p.m on a Saturday afternoon. Officer Brown 's car computer indicated an active arrest warrant for Ms. Young (for failure to report and pay probation fees). He called a police communications operator, Shirley Shook, for verification of the warrant and was told that the warrant was for Ms. Young. In actuality, this warrant was for Ms. Young's sister-in-law, Glenda Marie Walker, who had on occasion used Ms. Young's name as an alias. Ms. Shook misread the information on her computer and failed to notice that Ms. Young's name was listed only as an alias.

Officer Brown took Ms. Young to the Pulaski County jail. The City does not have its own jail but uses the one operated by Pulaski County. At the jail, the intake deputy, Yvonne Engram, accepted Ms. Young for lock-up even though the copy of the warrant which had been faxed to the jail showed Ms. Walker as the subject of the warrant. When he saw the copy of the warrant and attached photograph, Officer Brown thought he had made a mistake and at approximately 6:00 p.m. told a supervisor on duty, Sergeant Robert Haggard, about it. Sergeant Haggard told Officer Brown to

---

[1]The Hon. Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

seek guidance from the Little Rock Police Department's detectives' office. Officer Brown did so and reported back that he was told Ms. Young would have to remain in jail until Monday morning, when a judge could decide what to do. During this detention, Ms. Young was strip searched.

On Monday morning in the courtroom, the municipal court judge determined that the wrong person had been arrested and ordered Ms. Young released. Instead of releasing Ms. Young, a City police officer returned her to a holding cell, where she remained for approximately 30 minutes. She was then chained to other female detainees and transported back to the County jail, where her clothing and belongings were. While there – approximately 2 ½ hours – she was again strip searched. Out-processing was completed and Ms. Young was released at about 2:00 p.m.

## II.

Ms. Young filed this action under 42 U.S.C. § 1983 claiming that her Fourth and Fourteenth Amendment rights were violated. She named as defendants the City; Officer Brown, Ms. Shook, Sergeant Haggard, and Deputy Engram, all in their individual capacities; and Randy Johnson, in his official capacity as Pulaski County Sheriff.

In considering pre-trial motions to dismiss and for summary judgment, the District Court determined that Ms. Young's arrest and pre-hearing detention did not violate the Fourth Amendment. The Court first concluded that Officer Brown's actions at the time of the arrest were objectively reasonable in light of the facts and circumstances confronting him, and that Ms. Shook did not know her actions would lead to the arrest of an innocent person. The Court then concluded that the judicial hearing to determine probable cause which was provided within 46 hours of Ms. Young's arrest met constitutional requirements for her pre-hearing detention.

According to the Court, an objective view of the facts known to Officer Brown and Sergeant Haggard prior to the hearing "did not negate, beyond a reasonable doubt, the probable cause that supported Young's detention." The Court also concluded that no evidence existed that the City had a policy or custom which caused Ms. Young's pre-hearing detention. Based on these conclusions, the District Court dismissed Sergeant Haggard, Ms. Shook, and Ms. Engram, granted summary judgment to Officer Brown, and granted summary judgment to the City for any claim based on the arrest and detention before the judge's order of release.

Sheriff Johnson and Ms. Engram, the County defendants, settled the claims against them for $47,500, and the remaining claims against the City, based on Ms. Young's post-hearing detention, proceeded to trial. The jury returned a verdict in favor of Ms. Young and, by special verdict form, awarded her damages for two separate periods of time – $35,000 for the time in the holding cell ("period one"), and $65,000 for the time back at the County jail ("period two").

The District Court offset this award in light of the settlement with the County defendants. The Court noted that after deduction of her attorney's fees, Ms. Young received $31,666.67 of the $47,500 settlement. Exercising its discretion to award Ms. Young attorney's fees under 42 U.S.C. § 1988(b) as the prevailing party, the Court offset the jury award by the $31,666.67 Ms. Young actually received from the County. The Court denied the City's post-trial motion for judgment as a matter of law, for a new trial, or for remittitur, concluding that the jury's verdict was supported by the evidence. By separate order, the Court granted Ms. Young $86,013.08 in attorney's fees. This figure resulted after a reduction equal to the amount of fees the plaintiff had paid out of the County's settlement.

III.

On appeal, the City first argues that, as a matter of law, there was no violation of Ms. Young's constitutional rights during "period one," while she was awaiting the completion of necessary paperwork for her release. The City next argues that, as a matter of law, the harm sustained by Ms. Young during "period two" is not attributable to the City, but rather to the County. In particular, the City argues that there was no causal link between the strip search and City custom or policy.

The City also asserts evidentiary error in the admission of evidence of Ms. Young's treatment while in County custody before going to court, and instructional error in the District Court's rejection of the City's proposed instructions (1) on the causation element of an unreasonable seizure, (2) that the municipal court judge and his bailiff were not City actors, and (3) that under Arkansas law, the sheriff of a county is solely responsible for the County jail.

The City also argues that the entire amount of the settlement with the County should have been offset, and that the amount of damages awarded by the jury was excessive.

Ms. Young argues on appeal that she stated a claim against the City for a custom or policy that allows too many mistaken-identity arrests, and that, accordingly, her claim for damages against the City for the one-and-one-half days of detention before the municipal judge's order of release should not have been dismissed. Ms. Young also argues that her claims against Officer Brown, Ms. Shook, and Sergeant Haggard should not have been dismissed prior to trial. Officer Haggard argues in response that the District Court correctly determined that a constitutional claim was not stated against him, and that, alternatively, he is entitled to qualified immunity.

IV.

We review the District Court's grant of motions to dismiss and motions for summary judgment de novo. Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir. 1999). A motion to dismiss should be granted only if, taking the allegations in the complaint as true, it appears beyond doubt that plaintiff can prove no set of facts demonstrating entitlement to relief. Id. A motion for summary judgment should be granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We first conclude that the District Court's ruling that no claim was stated against Officer Brown or Ms. Shook arising out of the arrest and initial detention was correct. When Officer Brown made the initial arrest, his car computer showed that there was a warrant for Ms. Young, and Ms. Shook had verified this information over the radio. Officer Brown had an objectively reasonable basis for making the arrest. As to Ms. Shook, she was mistaken, but the mistake was not deliberate. It was occasioned, rather, by the press of business and by the speed with which officers in Ms. Shook's position were required to act. A mistake made under these conditions, in our view, is not sufficient to render an arrest "unreasonable" within the meaning of the Fourth Amendment. Nor do we see any evidence of a custom or policy of the City here that led to the mistaken arrest. The City can be faulted for not putting in place more precise procedures, but there is no evidence of a custom or policy of making mistaken arrests. Ms. Shook's mistake, and Officer Brown's reliance on it, amounted to nothing more than negligence, which normally does not give rise to a claim under § 1983. See Lane v. Sarpy County, 165 F.3d 623, 624 (8th Cir. 1999).

The next sequence of events, occurring after Ms. Young had been taken to the jail, presents a closer question. By this time, Officer Brown had realized that there was no warrant for Ms. Young in her own name, and that her name appeared in "the

system" only as an alias for her sister, Glenda Marie Walker. He looked at Ms. Walker's photograph and formed the opinion that Ms. Young was not the person in the photograph. There is, however, no evidence that Officer Brown had the authority to release Ms. Young. It seems to us that he did what he should have done: he reported the facts to Sergeant Haggard, a superior officer. Sergeant Haggard advised Officer Brown to consult the detectives' office, and, according to Officer Brown, he was then instructed that the matter would have to wait for action by the court, which would not occur until Monday morning.

Ms. Young argues that Officer Brown and, through him, Sergeant Haggard, had actual knowledge at this point that Ms. Young had been improperly arrested. We think this overstates the case. Certainly there was reason to question whether a mistake had been made, but the situation was equivocal. Officer Brown had originally been informed that there was a warrant for Ms. Young in her own name. Thereafter, he learned that Ms. Walker had been using Ms. Young's name as an alias. The photograph did not match the appearance of the person arrested. On these facts, we believe that an objectively reasonable officer could have decided to wait for a judge to make the final determination. That the arrest occurred on a week end, when the judge was not readily available, is unfortunate. Indeed, it is more than that: it shows a decided lack of solicitude on the part of the City for the liberty of its citizens. We have to remember, however, the conditions under which police officers must work. We believe that Officer Brown and Sergeant Haggard were entitled to qualified immunity: that is, that a reasonable officer could have thought it reasonable to wait for a judge's decision.

This conclusion is supported by the Supreme Court's decision in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979). The case holds that the Fourth Amendment is not violated when an individual is arrested and detained (mistakenly) pursuant to a valid warrant for another person, where the person detained receives a probable-cause

hearing within three days of the arrest. Id. at 142-43. The Court declined to impose upon police officers an affirmative duty of investigating claims of mistaken identity. See also Lane v. Sarpy County, supra; Johnson v. City of St. Paul, 634 F.2d 1146 (8th Cir. 1980). The plaintiff argues that Baker is distinguishable. In Baker, the fact of the mistaken identity was not discovered for three days. Here, plaintiff argues, the defendants knew that they had the wrong woman, but decided to keep her detained for a probable-cause hearing on Monday morning nonetheless. If we were faced head on with the question whether the Fourth Amendment was violated, this distinction might well prove dispositive. But when the doctrine of qualified immunity is taken into account, we believe the District Court correctly held that these individual police officers are not liable in an action for damages. We decline to hold officers in this situation to the niceties of legal distinctions, even though the distinctions might seem persuasive to judges in the light of hindsight.

V.

We now turn to the portion of the case that went to the jury – the action against the City of Little Rock for events that took place after Ms. Young was ordered released by the Municipal Court. The City argues that some period of time must be allowed for an order of release to be carried out, and that certain administrative formalities (referred to as "out-processing") are permissible. Certainly the jury might have accepted this argument, but we do not think it had to. When Ms. Young appeared in court on Monday morning, the judge ordered a thumbprint comparison, a more reliable means of identification than a photograph. On the basis of this comparison, the court found that Ms. Young had not been properly arrested. The court stated: "show this lady released." Instead of releasing her, however, officers returned her to the holding cell, along with other prisoners, for transportation back to the jail. She was chained to five or six other female inmates, loaded onto a van, transported to the jail, and there strip searched, all of this occurring after the court had ordered her released. The strip search

-9-

took place in front of five or six other people. Only after this was she allowed to change into her own clothes and actually set free.

The City contends that the phrase "show her released" is not the same thing as ordering her released in the courtroom. The matter, we suppose, is arguable, but it is not so clear as to make the jury's verdict unreasonable as a matter of law. Indeed, the City itself, in its answer to paragraph 41 of the complaint, stated that "Judge Munson . . . dismissed the charge as to Mrs. Young and ordered her released . . .." The City says it was not practical to release her at that time, because she was still in jail clothing (an orange jumpsuit). We think the jury could reasonably conclude that this aspect of the problem could have been left up to the plaintiff. In addition, the City could have had her transported back to the jail without chaining her, and certainly there was no necessity whatever to strip search a person who was wholly innocent of any charge. The whole incident is shocking.

As the City points out, it does not operate the jail. The City of Little Rock has no jail of its own. It contracts with the County for the housing of City prisoners. What the County does with prisoners, therefore, the City says, is not its problem, and there is no vicarious liability under § 1983. Although this line of argument has some surface appeal, we do not believe that the jury had to accept it. City employees were aware of the custom of chaining prisoners, and they knew that Ms. Young was being taken back to the jail. Strip searching of prisoners is routine procedure, and the jury could reasonably infer that the City knew that a person entering the jail, in jail clothing with a group of other detainees, would be strip searched. In these circumstances, it is far from unfair to attribute to the City the policies routinely used by the County jail in the housing and processing of City prisoners.

The City argues that the verdict is too high – $35,000 for the time spent in the holding cell at the Municipal Court after the order of release, and $65,000 for the time

spent at the jail before release actually occurred. We grant that the amounts are high, but they are not so excessive as to be shocking. The liberty of the individual is at stake here. A citizen had been arrested, erroneously as it turned out, and a court had ordered her released. The court's order had not been followed. Instead, a process of administrative foot-dragging took place, characterized by gross indignities. There was evidence of serious psychological harm, including the facts that Ms. Young was reluctant to leave her house for a substantial period of time following the incident, and that she became ill when questioned by a police officer in front of her home (in a completely unrelated incident). We cannot say that the jury's award was "shocking, monstrous, or constitute[d] a plain injustice." City National Bank v. Unique Structures, Inc., 929 F.2d 1308, 1315 (8th Cir. 1991).

## VI.

The City argues that it did not receive sufficient credit for the settlement paid by the County. This argument is based on the Arkansas version of the Uniform Contribution Among Joint Tortfeasors Act, Ark. Code. Ann. § 16-61-204 (Michie 1987). This statute reads as follows:

> A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

The County defendants paid $47,500 to settle the claims against them. This amount included claims for attorneys' fees and costs. The fee, by agreement between Ms. Young and her lawyers, was one-third of the recovery. The remainder, $31,666.67, went to the plaintiff. When the court entered judgment after the $100,000 jury award,

-11-

this figure was reduced by the amount that Ms. Young had received personally from the settlement. Thus, the judgment against the City was for $68,333.33.

The City argues that it should have received an additional credit, against the $100,000 jury award, of $15,833.33. The District Court rejected this argument, holding that under 42 U.S.C. § 1988(b) it had discretion to award attorneys' fees to a prevailing party in an action brought to enforce § 1983. When awarding attorneys' fees after the entry of judgment, however, the District Court reduced the amount awarded by the portion of Ms. Young's settlement proceeds that represented fees. An award of fees is reviewed for abuse of discretion only. The trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth. It knows how to balance portions of the case together to reach a just and reasonable award. We see no abuse of discretion here.

If the District Court had first reduced the $100,000 jury verdict by the full amount of the settlement paid by the County, it would then have awarded a judgment against the City for $52,500, instead of the actual award, which was something over $68,000. In this event, the City argues, the results obtained against it would have been somewhat less advantageous to the plaintiff, and the fee awarded might have been accordingly reduced. We acknowledge the theoretical force of this argument, but we believe the District Court was well aware of what it was doing, and that the ultimate fee award, which took into account the fees that had been paid out of the County settlement, was reasonable. Accordingly, the fee award is affirmed.

## VII.

As we have indicated, the City also argues that there was error in the admission of evidence, and that certain jury instructions it requested should have been given. These arguments do not require extended discussion. There was no abuse of discretion in the admission of evidence. The instructions as given, when considered as a whole,

correctly stated the law.  The jury was required to find that Ms. Young's treatment, after she was ordered released, was a direct result of a policy of the City.  Certainly it is true, in the ordinary case, that a sheriff is solely responsible for the operation of the county jail, but this is not an ordinary case.  The County jail was functioning, in effect, as the City jail, and the jury could reasonably infer that the City was aware of the policies and practices customarily followed by the County at the jail.

The judgment and the award of attorneys' fees and costs are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.