# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3156

_____

| | | |
|---|---|---|
| Earl Leon Luckes, Jr., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| County of Hennepin, Minnesota; | * | District of Minnesota. |
| Patrick D. McGowan, Sheriff; | * | |
| Michele Smolley, Chief Deputy; | * | |
| Thomas Merkel, Inspector; Former | * | |
| Inspector Richard Estensen, officially | * | |
| and individually, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  May 13, 2005
Filed:  July 28, 2005

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Earl Leon Luckes, Jr., appeals from the district court's[1] grant of summary judgment against him and in favor of appellees Hennepin County, Minnesota, and Sheriff Patrick D. McGowan.  We affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## I.

On May 5, 1999, the Minnesota State Patrol issued two traffic citations to Luckes for failure to produce proof of insurance, in violation of Minn. Stat. § 169.791, and failure to wear a seat belt, in violation of Minn. Stat. § 169.686. Through the claimed inadvertence of Luckes and his wife, the fines imposed by the citations were not paid, and bench warrants for Luckes's arrest were subsequently issued on June 15, 1999. In addition, Luckes's driver's license was suspended on January 12, 2000.

On May 9, 2001, Luckes was again stopped by the Minnesota State Patrol and cited for driving with a suspended license, in violation of Minn. Stat. § 171.24, and driving with an expired license, in violation of Minn. Stat. § 171.27.[2] The citing officer then arrested Luckes pursuant to the bench warrants and transported him to the Hennepin County Adult Detention Center (ADC). Luckes arrived at the ADC at approximately 7:30 a.m. and was placed in a holding cell.[3] Prior to being placed in the cell, he was told by an officer that he had "picked the worst day to be here." In addition, a sign posted in various locations at the ADC asked inmates to "be patient" due to the fact that completing their paperwork and processing "may take more than eight hours."

---

[2]The record does not reflect the impetus for the traffic stop, save for a brief assertion by appellees that Luckes's driving "attracted the attention" of the Minnesota State Patrol. Thus, the question of exactly which characteristic of Luckes's driving was unusual is left to our speculation and that of the reader. Similarly, the record does not reflect whether Luckes was aware of either the suspension or the expiration of his license prior to the stop.

[3]The appellees claim that Luckes actually arrived at the ADC at 8:12 a.m. Because this case comes before us on summary judgment, however, we read the record in the light most favorable to Luckes as the nonmoving party and give him the benefit of all reasonable inferences to be drawn from the record. Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 719-20 (8th Cir. 2003).

The evening before Luckes was detained, the ADC activated a new computerized jail management system designed to update the ADC's record keeping and processing functions. During Luckes's time at the ADC, the facility encountered a number of problems with the system, thereby increasing the ADC's intake and booking processing times. These operational difficulties, superimposed upon the ADC's standard inmate processing procedures, resulted in Luckes's detention at the ADC until 7:48 a.m., a period of approximately twenty-four hours.[4]

During his twenty-four-hour detention, Luckes was repeatedly placed in overcrowded cells with persons arrested for crimes significantly more violent in nature than the mere failure to pay traffic fines. He endured threats and intimidation from other inmates, as well as mockery prompted by his speech impediment. Each time he was taken to complete a step in the booking and processing procedure, ADC personnel repeated the activity a number of times because of their lack of familiarity with the new system. Finally, after initially being told that he would be released "shortly after booking," Luckes's ordeal ended and he left the ADC. During Luckes's stay, approximately 107 persons were booked into the ADC and approximately 96 were released.

Luckes subsequently brought suit against Hennepin County and Sheriff McGowan, as well as against certain other county officers in both their official and personal capacities, in federal district court. The county officers were later

---

[4]The record is inconsistent regarding the precise time at which Luckes left the jail. Luckes first claimed in a deposition that he was released at approximately 7:30 a.m., but later claimed in an affidavit that he was not released until 8:30 a.m. The record also contains a booking report, signed by Luckes, that indicates a 7:48 a.m. release. Even reading these facts in the light most favorable to Luckes, the only reasonable inference to be drawn is that he was released at 7:48 a.m. In any event, the one hour difference between a 7:48 a.m. and an 8:30 a.m. release time does not affect our disposition of Luckes's § 1983 claim.

voluntarily dismissed from the case, and Luckes's suit proceeded against Hennepin County and Sheriff McGowan in his official capacity only (collectively, the County). Luckes's complaint asserted that: (1) the County had a policy, practice, custom, or usage of unreasonably delaying the release of persons entitled to release, in violation of both the Fourth and Fourteenth Amendments to the Constitution, and thus was liable for Luckes's wrongful detention under 42 U.S.C. § 1983; (2) the County was liable for its violation of Luckes's rights under the Minnesota Constitution; and (3) the County was liable in tort for false imprisonment.

The district court granted summary judgment on Luckes's § 1983 claim, holding that it could find no authority establishing that a processing time in excess of eight hours was unconstitutional and that Luckes had not presented any evidence to support his claim that such delays were unreasonable. The district court also found that the Minnesota Supreme Court had not recognized a private constitutional cause of action for unreasonable seizures, and accordingly granted summary judgment on Luckes's second claim. Finally, the district court declined to exercise supplemental jurisdiction over Luckes's state law tort claim, given the dismissal of his federal claim, and thus dismissed the tort claim without prejudice. Luckes appeals only the dismissal of his § 1983 claim.

**II.**

We review a district court's grant of summary judgment *de novo* and apply the same standards as the district court. Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005). Summary judgment is warranted if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Id. To survive a motion for summary judgment on a § 1983 claim, "the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." Kuha v. City of Minnetonka, 365 F.3d

-4-

590, 596 (8th Cir. 2004) (citation and quotations omitted). It is undisputed that the County acted under color of state law, and so Luckes must raise a genuine issue of material fact only as to whether the County's conduct deprived him of a constitutionally protected federal right.

Luckes first attempts to make this showing by asserting that the County's conduct deprived him of his Fourth Amendment right against unreasonable searches and seizures. Because Luckes was named in a valid bench warrant, however, probable cause for his arrest pursuant to that warrant was established, and his Fourth Amendment argument is thus without merit. See, e.g., Armstrong v. Squadrito, 152 F.3d 564, 569-70 (7th Cir. 1998). Rather, Luckes's claim that his extended detention violated his constitutional rights is more properly analyzed under the framework of the Due Process Clause of the Fourteenth Amendment. See Hayes v. Faulkner County, 388 F.3d 669, 673 (8th Cir. 2004) (Due Process Clause controls when issue is extended detention following arrest by warrant); Armstrong, 152 F.3d at 569-70. Luckes accordingly argues in the alternative that his twenty-four-hour detention violated his substantive due process rights.

In determining whether extended detention following an arrest pursuant to a valid warrant violates substantive due process, we utilize the framework set forth by the Seventh Circuit in Armstrong. Hayes, 388 F.3d at 673. Under this framework, we look to the totality of the circumstances and consider: (1) whether the Due Process Clause prohibits the alleged deprivation of rights; (2) whether the defendants' conduct offended the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience.[5] Id. Although the Armstrong

---

[5]Despite Luckes's apparent argument to the contrary, he must show both that the County's conduct was conscience-shocking and that the County violated one or more of his fundamental rights that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Moran v. Clarke, 296 F.3d 638, 651 (8th

framework specifically dealt with detentions prior to an initial appearance before a magistrate following arrest under a valid warrant, see id., we believe that it is equally applicable to Luckes's claim that his booking and processing time after arrest under a valid warrant was excessive.

Luckes asserts that the County violated his substantive due process interest in freedom from incarceration by maintaining a booking and release procedure that was deliberately indifferent to that interest, resulting in a twenty-four-hour detention. We have previously stated that the Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest from unlawful state deprivation, such as where the state detains the individual after he is entitled to release. E.g., Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004). In addition, we have recognized that, in certain circumstances, deliberate indifference to an individual's constitutional rights may shock the conscience. Kuha, 365 F.3d at 606. Even assuming, *arguendo*, that Luckes has raised a genuine issue of material fact regarding whether he was entitled to immediate release and whether the County was deliberately indifferent to his liberty interest, however, his substantive due process claim fails because the totality of the circumstances indicates that his lengthy detention—while unfortunate and understandably upsetting—does not shock the conscience.

Luckes ultimately argues that the County's inefficiently executed booking and release procedures resulted in his extended detention, the duration of which should shock our conscience. This is a question of law. Hayes, 388 F.3d at 675. Our cases, and those of the Seventh Circuit that we have cited with approval on this subject, see, e.g., Hayes, have held that post-arrest detentions of fifty-seven days, thirty-eight days, and eighteen days sufficiently shock the conscience to establish a substantive due process violation. See Armstrong, 152 F.3d at 581-82 (fifty-seven days); Hayes, 388

---

Cir. 2002) (en banc) (Bye, J., concurring) (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)) (internal quotations omitted).

F.3d at 675 (thirty-eight days); <u>Coleman v. Frantz</u>, 754 F.2d 719, 723-24 (7th Cir. 1985) (eighteen days). Such detentions far exceed the twenty-four-hour detention experienced by Luckes. Furthermore, although we held in <u>Young v. City of Little Rock</u>, 249 F.3d 730 (8th Cir. 2001), that a thirty-minute detention could shock the conscience, the detention at issue in that case involved the public chaining and strip search of an innocent person. <u>Id.</u> at 736. In contrast, Luckes complains of no such treatment from County personnel, and he in fact committed the offenses for which he was arrested.

We need not delineate with precision the duration and circumstances of detention that might result in a substantive due process violation. Suffice it to say that the circumstances of Luckes's detention do not. Because Luckes cannot show that his substantive due process rights were violated, the County cannot be held liable for his detention under § 1983. <u>See</u> <u>Kuha</u>, 365 F.3d at 603 (municipality may not be held liable under § 1983 in absence of constitutional tort).

The judgment is affirmed.

_____