Thomas Simms VAN BAALE, Appellant,

v.

CITY OF DES MOINES, William Moulder, Individually and in His Official Capacity as Chief of Police of the City of Des Moines, and Kayne Robinson, Individually and in His Official Capacity as Assistant Chief of Police of the City of Des Moines, Appellees.

No. 94–1282.

Supreme Court of Iowa.

June 19, 1996.

Alfredo Parrish and Maggi Moss of Parrish, Kruidenier, Moss, Dunn, Montgomery & Thomas, Des Moines, for appellant.

Terrence A. Hopkins and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, and Becky S. Knutson of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellees William Moulder and Kayne Robinson.

Bruce E. Bergman, City Solicitor, Des Moines, for appellee City of Des Moines.

Jon K. Swanson of Austin, Gaudineer, Austin, Salmons, Swanson & Hopkins, Des Moines, amicus curiae, for Iowa Communities Assurance Pool and Iowa League of Cities.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

A discharged Des Moines policeman unsuccessfully protested his dismissal through the administrative process and also through judicial review. He then brought this action seeking damages and reinstatement. We agree with the district court's dismissal of the action.

Thomas Van Baale was a seventeen-year veteran of the Des Moines police department. His service record appears to have been exemplary, but his career disintegrated after his former wife filed a domestic abuse complaint against him. *See* Iowa Code § 236.3 (1993). Van Baale did not meekly submit to arrest, and was also charged with interference with official acts by displaying a dangerous weapon. *See* Iowa Code § 719.1. After this incident he was provided psychiatric care in a local hospital.

Van Baale pled guilty to the obstruction-of-justice charge. In addition, although steadfastly denying the allegations, he entered a *nolo contendere* plea on the domestic abuse charge and was found guilty. The court granted him a deferred sentence on both counts. Soon thereafter the department terminated Van Baale's employment.

Van Baale raised two arguments in his administrative challenge before the civil service commission. He first contended his discharge was disproportionately harsh when compared with other disciplinary decisions, especially in view of his exemplary service record. His second argument was based on his claim that Des Moines police chief William Moulder had assured him that, if he pled guilty to the charges against him, he would retain his job, subject to a thirty-day suspension. Van Baale asserted Chief Moulder made this "guarantee" in the interest of avoiding a trial, with the accompanying negative publicity for the police department. Van Baale alleged he relied on the chief's assurance to his detriment by submitting guilty and *nolo contendere* pleas instead of going to trial as he initially planned. Van Baale claimed that Moulder changed his mind about the suspension and decided to discharge him instead, because he was influenced by adverse media coverage and comments made by local public officials. Van Baale therefore argued Moulder and the city should be estopped from discharging him.

The commission rejected Van Baale's arguments and upheld his firing. On judicial review the district court upheld the civil service commission ruling. On appeal the court of appeals affirmed, and we denied further review.

Prior to that court of appeals decision, Van Baale filed this petition at law against the City of Des Moines, Moulder, and assistant chief Kayne Robinson, alleging breach of oral contract, promissory estoppel, negligence, denial of equal protection, and intentional infliction of emotional distress. The district court granted the defendants' motion to dismiss. In appealing this ruling, Van Baale first contends the district court erred in holding Iowa Code chapter 400 (civil service) provided his exclusive remedy, and thus preempted his common-law claims. He also asserts the district court erred in dismissing his equal protection claim. .

We affirm the district court, vacating a court of appeals decision that held Van Baale's common-law claims were viable. In this law action our review is for correction of errors at law. Iowa R.App.P. 4.

■ I. Considering Van Baale's first contention we note Iowa Code section 400.18 provides that civil service employees shall not be "removed, demoted, or suspended arbitrarily, except as otherwise provided in this chapter...." In turn, section 400.19 states: "[T]he chief of police ... may peremptorily suspend, demote, or discharge a subordinate ... for neglect of duty, disobedience of orders, misconduct, or failure to properly perform ... duties." Such a decision may be appealed by the aggrieved officer to the civil service commission. Iowa Code § 400.20; *see also id.* § 400.27 (granting the civil service commission jurisdiction to hear and determine matters under this chapter). Chapter 400 is silent on whether its remedy is or is not exclusive. This silence does not indicate the legislature intended for the chapter's remedy to be nonexclusive; silence on the subject renders the matter ambiguous and requires us to proceed under the rules of statutory construction. *Goebel v. City of Cedar Rapids*, 267 N.W.2d 388, 392 (Iowa 1978).

■ Among the most venerable of the canons of statutory construction is the one stating that a statute should be given a sensible, practical, workable, and logical construction. *Wollenzien v. Board of Educ.*, 297 N.W.2d 215, 217 (Iowa 1980). According to another rule, when a statute grants a new right and creates a corresponding liability unknown at common law, and at the same time points to a specific method for enforcement of the new right, this method must be pursued exclusively. *Snyder v. Davenport*, 323 N.W.2d 225, 227 (Iowa 1982); *Lodge v. Drake*, 243 Iowa 628, 631, 51 N.W.2d 418, 419–20 (1952) (stating the converse rule that when a statute merely prescribes a *new remedy* for a *preexisting right* or liability, such new remedy is deemed cumulative, unless

the statute shows an intention to abrogate or supersede the old remedy).

■ We note and approve the following variation of the rule: "Where the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive." 1A C.J.S. *Actions* § 14 n. 55 (1985); *cf. Snyder*, 323 N.W.2d at 227 (finding the case squarely within the statutory scheme, and holding that a suit against a liquor licensee for selling liquor to an intoxicated person may be brought only by following the dramshop act); *Goebel*, 267 N.W.2d at 392 (noting the federal rule that when Congress has established a comprehensive statutory scheme, the scheme is presumed to be the exclusive remedy).

■ Chapter 400 creates a new right to continued employment (subject only to removal for cause) that did not exist at common law where public employment was at-will. Because chapter 400 creates this new right—not merely a new remedy for a preexisting one—we think chapter 400 proceedings must be considered the exclusive means of challenging the arbitrariness of a civil service employee's discharge.

This view is not altered by Van Baale's attempt to characterize his suit as something other than a wrongful termination claim. It is true he did not label his action as one for wrongful discharge. His claims for breach of oral contract, promissory estoppel, and negligence [1] nevertheless hinge on Moulder's alleged promise that Van Baale would retain his job. The petition also requests, among other things, his reinstatement. To characterize the petition in any manner other than one for wrongful termination would raise form over substance.

■ II. What we have said does not necessarily resolve Van Baale's claim for intentional infliction of emotional distress. Although this claim stems from Van Baale's discharge, it asserts a right (protection from intentional torts) that differs from the rights protected by the civil service statute (protec-

tion from arbitrary discharge). Moreover the intentional infliction of emotional distress claim requires factual proof beyond what is required to show arbitrary discharge: outrageous conduct and severe emotional distress. So we think Van Baale's claim for intentional infliction of emotional distress was not preempted by chapter 400. *See* 82 Am. Jur.2d *Wrongful Discharge* § 218 (1992) (stating traditional tort causes of action are not preempted by statutory remedies when the rights asserted in the tort claim are different from the rights protected by the statute, especially when the tort claim requires proof of facts beyond those necessary to state a claim under the statute).

■ The analysis does not end here. To assert a claim for the tort of intentional infliction of emotional distress, a plaintiff must demonstrate four elements: (1) outrageous conduct by the defendants; (2) the defendants' intentional causing, or reckless disregard of the probability of causing emotional distress; (3) severe or extreme emotional distress was suffered by the plaintiff; and (4) actual proximate causation of the emotional distress by the defendants' outrageous conduct. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985). Defendants also urge dismissal on the ground that Moulder was not guilty of any outrageous conduct that would satisfy the first element of outrageousness.

■ To satisfy that first element a defendant's conduct must be extremely egregious; mere insult, bad manners, or hurt feelings are insufficient. The showing required to elevate mere bad conduct to the level of outrageousness has been described this way:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Gen-

---

1. His claim for intentional infliction of emotional    distress will be discussed later.

erally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d (1965) (cited in *Northrup,* 372 N.W.2d at 198).

This standard is not easily met, especially in employment cases. *See, e.g., Northrup,* 372 N.W.2d at 198–99 (employee's discharge for alcoholism could not reasonably be considered outrageous even though supervisor had yelled at employee, told employee that he would not tolerate anymore of employee's behavior, suggested that employee had falsified some documents, and accused employee of lying); *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 119 (Iowa 1984) (conduct of school bus driver supervisors was not outrageous even though it was sufficient to allow finding that supervisors engaged in a deliberate campaign to badger and harass driver by (1) conducting a time study of her route and requiring her to report the theoretical route on her time cards even though it did not affect her pay and despite contrary prior practice, (2) accusing her of falsifying time records and persisting in the accusation even though supervisors were aware that she reported time accurately, and (3) discharging her on grounds of dishonesty and describing her discharge that way to a prospective employer). Under these principles we find, even when viewing the evidence in a light most favorable to Van Baale, that Moulder's actions did not amount to "outrageous conduct." We therefore hold the claim for emotional distress was correctly dismissed.

III. The district court and court of appeals were also correct in holding that Van Baale did not assert a viable equal protection claim. On appeal Van Baale argues he received disparate treatment as a member of a class of police officers subject to intense media coverage for alleged misconduct. His claim as shaped in district court however did not specify any persons who—as a class—were treated in a manner denied to him. His claim was merely that other officers, persons within his own class, had received less severe sanctions for the same or more egregious conduct. This amounted to nothing more than an assertion of inconsistency in meting out punishment for misconduct by persons within a single class. The equal protection clause does not require similar ad hoc determinations for persons in the same class. *See Glen Haven Homes v. Mills County Bd. of Review,* 507 N.W.2d 179, 183 (Iowa 1993) ("ad hoc adjudication in separate [tax exemption] cases is specifically designed to produce dissimilarity in result . . .").

Moreover, Van Baale did not point to any state or federal statute that was being applied to his disadvantage. Although the equal protection clause creates a constitutionally protected right, it is not self-enforcing. *See Katzenbach v. Morgan,* 384 U.S. 641, 648, 86 S.Ct. 1717, 1722, 16 L.Ed.2d 828, 834 (1966). Equal protection rights may be enforced only if the Congress or a legislature provides a means of redress through appropriate legislation. *Id.* Equal protection applies only if the claimant can point to another class whose members enjoy some benefit or right denied to the claimant. We think the trial court was clearly correct in holding Van Baale's assertion did not suffice as the basis for a claim of violation of equal protection.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**