# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2286

_____

| | | |
|---|---|---|
| Ginger Turner, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jeri Holbrook, Individually; Steve | * | Southern District of Iowa. |
| Hofheins, Individually; Jason Henslee, | * | |
| Individually; United States of America; | * | |
| United States Postal Service, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 14, 2001

Filed: February 1, 2002

_____

Before BYE, RICHARD S. ARNOLD, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Ginger Turner (Turner) appeals the dismissal by the district court[1] of her constitutional tort claims, her claim for false arrest, and her promissory estoppel claim. Turner, a United States Postal Service employee working at both the

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Coralville and the Iowa City, Iowa offices, brought the instant action based upon an investigation initiated by her supervisor and by a postal inspector and another investigator regarding suspected worker's compensation fraud. Following the investigation, the Postal Service terminated Turner. She contested the termination. In an arbitration conducted pursuant to statutory grievance procedures, Turner was reinstated with back pay. We affirm the district court's dismissal of Turner's constitutional tort and promissory estoppel claims and the court's summary judgment on Turner's false arrest claim.

## I.  BACKGROUND

On August 13, 1998, Turner sustained a work-related lower back injury. Turner reported the injury to her employer five days later. The next day she visited a doctor who diagnosed her with a low back sprain. The doctor prescribed medication and told Turner not to return to work until after her next scheduled visit on August 31, 1998.

Before the accident Turner had secured vacation time for the period August 22-30. After the accident, her supervisor, Jeri Holbrook (Holbrook), sent Turner a worker's compensation form to fill out and return. Holbrook did not hear from Turner or receive the form. Holbrook made several attempts to contact Turner by telephone. When Turner did not answer or return the calls, Holbrook became suspicious that Turner feigned the injury in order to leave for vacation earlier than planned.

Turner's doctor released her to work on August 31, 1998. When she returned, Holbrook asked Turner to fill out a CA-1 form.[2] Turner filled out a CA-1 form to reflect the period that she was absent from work was annual leave or vacation time. On September 9, 1998, Holbrook sent a memo to the Injury Compensation Office

---

[2]A CA-1 form is also known as the "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation."

raising concerns regarding Turner's injury claim. Thereafter, Turner alleges Holbrook insisted that she change the CA-1 form from an annual leave request to a worker's compensation leave request and assured Turner the change would not cause additional problems. Turner complied. The next day an internal investigation began related to the amended leave request.

The internal investigation was conducted by defendant Steve Hofheins (Hofheins), then a Postal Inspector, and defendant Jason Henslee (Henslee), then an Injury Compensation Investigator. The investigators initially interviewed Turner on September 10, 1998, for approximately five minutes, at which time she stated she had planned to go on vacation to Arkansas during her absence, but did not go because of the injury. Turner told investigators she had been upstairs at home, but did not receive telephone messages because her answering machine was not working.

The investigators re-interviewed Turner on September 22, 1998. The second interview lasted approximately twenty minutes. Turner was accompanied by a Union steward. The investigators asked Turner to confirm information they had that Turner had been out of town from August 22-30, rather than at home as Turner had previously stated. Turner, on the advice of the Union steward, refused to answer any questions. Turner had been in Arkansas during the subject time period.

On August 9, 1999, the Postal Service terminated Turner, issuing her a "Notice of Removal" for providing false information in an official investigation. Turner appealed the termination by filing a grievance pursuant to the grievance procedures of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 1001-11 & 1201-09, and the collective bargaining agreement between her Union and the Postal Service. Turner prevailed in an arbitration of the grievance and was reinstated to her prior position with back pay.

In her third amended complaint, Turner alleged four constitutional tort claims brought pursuant to <u>Bivens</u> against Hofheins and Henslee. <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). Additionally, Turner asserted false arrest, malicious prosecution and abuse of process claims against the United States for the actions of Hofheins and Henslee on behalf of the Postal Service. Finally, Turner asserted promissory estoppel against Holbrook and the Postal Service.

The district court granted the defendants' motion to dismiss with regard to Turner's constitutional tort and promissory estoppel claims finding Turner had failed to state claims upon which relief could be granted. The district court granted summary judgment on Turner's claims brought pursuant to the Federal Tort Claims Act. Turner appeals the district court's dismissal of her <u>Bivens</u> claims, her claim for false arrest, and the promissory estoppel issue.

## II.    DISCUSSION

We review the district court's grant of motions to dismiss and motions for summary judgment de novo. <u>Young v. City of Little Rock</u>, 249 F.3d 730, 734 (8th Cir. 2001). In reviewing a motion to dismiss, we construe the complaint liberally, taking all factual allegations as true, and "will affirm only if it appears beyond doubt that [the plaintiff] cannot prove any set of facts in support of [the] claim which would entitle [her] to relief." <u>Sisley v. Leyendecker</u>, 260 F.3d 849, 850 (8th Cir. 2001). A motion for summary judgment should be granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A.    <u>Bivens</u> Claims

Turner asserts claims for violations of her First, Fourth and Fifth Amendment rights against Hofheins and Henslee under <u>Bivens</u>. Specifically, Turner alleges these defendants deprived her of her property and liberty interests in her employment;

-4-

violated her rights to freedom of speech and to seek redress; and violated her right to be free from unreasonable search and seizure. The factual bases of these claims are limited and unclear as no additional facts, other than provided herein, were alleged.

In Bivens, the Supreme Court recognized a right to recover damages against federal officials who violate an individual's Fourth Amendment constitutional rights. Id. at 395; see Carpenter's Produce v. Arnold, 189 F.3d 686, 687 (8th Cir. 1999). However, a Bivens action cannot lie where affirmative action by Congress provides an alternative remedial system. Sisley, 260 F.3d at 850-51 (citing Bivens, 403 U.S. at 396-97). The Eighth Circuit has held, where a mail carrier "possessed rights and had access to grievance procedures provided by the [PRA], . . . and by the collective bargaining agreement between his union and the Postal Service, . . . he is precluded from seeking relief outside that system." Sisley, 260 F.3d at 851 (internal citations omitted); see also Bradley v. United States Postal Serv., 832 F.2d 1061, 1062 (8th Cir. 1987) (per curiam).

Turner's case is legally indistinguishable, and we are bound by the decision in Sisley. Turner contends her Bivens claims are distinguishable because postal inspectors, that is, law enforcement officers, interrogated her about possible criminal violations. Whether Hofheins and Henslee were investigating only an employee disciplinary matter or additionally a possible criminal matter, Turner's remedy was still the PRA. See Bennett v. Barnett, 210 F.3d 272, 274-76 (5th Cir.), cert. denied, 531 U.S. 875 (2000). Turner has an extensive array of statutorily-created rights and procedures provided through the PRA. Sisley, 260 F.3d at 851. Accordingly, Turner is precluded from seeking relief under Bivens by her access to the PRA and to the collective bargaining agreement procedures.

B.    Promissory Estoppel

Turner asserted promissory estoppel against Holbrook and the Postal Service. The promissory estoppel claim arises from Holbrook's alleged promise that applying

for worker's compensation rather than annual vacation leave would not cause additional problems. Turner's assertion of promissory estoppel is governed by Iowa state law.

The Iowa Supreme Court held "'[w]here the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive.'" Van Baale v. City of Des Moines, 550 N.W.2d 153, 156 (Iowa 1996) (quoting 1A C.J.S. Actions § 14, n.55 (1985)). In Van Baale, a police officer was arrested after his former wife filed a charge of domestic violence against him. Id. at 154. The police officer asserted promissory estoppel alleging the police chief assured him if he pled guilty to the charges, he would retain his job. Id. at 155. The police officer was terminated, and the termination was upheld in grievance proceedings provided by Iowa Code Chapter 400. Id. Iowa Code Chapter 400 provides grievance procedures for Iowa Civil Service employees including police officers. Although the statute is silent on whether its remedy is exclusive or not, the Van Baale court determined the issue of promissory estoppel was part of the police officer's claim for wrongful termination and the exclusive remedy for such claim was an appeal through Iowa Code Chapter 400. Id. at 156.

Turner's claims are nearly identical. Turner alleged her supervisor "assured her that applying for workman's comp would not cause additional problems." Turner was subsequently terminated after an investigation of the information related to her seeking worker's compensation. Turner's exclusive remedy for her grievances against her supervisor and her employer were provided by the PRA's comprehensive scheme. Turner's promissory estoppel issue was part of her successful wrongful termination proceeding under the PRA.[3]

---

[3]We need not address the rather substantial issue of whether Holbrook's alleged assurance was "a clear and definite promise" which Iowa law requires for a promissory estoppel claim. Schoff v. Combined Ins. Co. of Am., 604 N.W.2d 43, 49 (Iowa 1999).

## C.    False Arrest

The Federal Tort Claims Act allows claims against the United States for the acts of its employees where a private person would be liable for the act under the law of the state where the action took place. 28 U.S.C. § 1346(b)(1); see Central Airlines, Inc. v. United States, 169 F.3d 1174, 1175 (8th Cir. 1999) (per curiam). The Act specifically includes claims for false arrest and false imprisonment by investigative or law enforcement officers of the United States Government. 28 U.S.C. § 2680(h). Under Iowa law a plaintiff must establish two elements for false arrest or for false imprisonment: "(1) detention or restraint against a person's will, and (2) unlawfulness of the detention or restraint." Barrera v. Con Agra, Inc., 244 F.3d 663, 666 (8th Cir. 2001) (citing Valadez v. City of Des Moines, 324 N.W.2d 475, 477 (Iowa 1982)).

Turner argues the district court erroneously granted summary judgment on her claim for false arrest because genuine issues of material fact remain regarding whether she was restrained against her will and such restraint caused her damages. Turner supports her claim by alleging: Hofheins admitted he should have advised Turner of her right to remain silent at the meeting held September 22, 1998; the investigators threatened Turner that she could go to prison; and she was being investigated for filing a worker's compensation claim after she had been "talked into" filing the claim. Turner alleged no other facts to support her claim with nothing to indicate any detention was unlawful.

Like the district court, we find Turner's argument unavailing. She was involved in two interviews, the first for five minutes and the second for twenty minutes at which time she was accompanied by a Union steward. Both interviews occurred at Turner's workplace. The reason for both meetings, possible worker's compensation fraud, was a legitimate basis for Turner's employer to conduct an investigation and to interview Turner on two relatively brief occasions. Turner was free to terminate the interview and clearly she felt free not to answer questions. Employers must have the opportunity to make such reasonable inquiries of

employees. We find, as a matter of law, Turner was not unlawfully detained against her will.

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.