# In the Iowa Supreme Court

No. 24–0864

Submitted January 21, 2025—Filed March 14, 2025

**Antoine Smith,**

Appellant,

vs.

**City of Cedar Rapids,**

Appellee.

Appeal from the Iowa District Court for Linn County, Chad Kepros, judge.

A police officer appeals the dismissal of his suit alleging violations of Iowa Code section 80F.1. **Affirmed.**

May, J., delivered the opinion of the court, in which all justices joined.

Skylar J. Limkemann (argued) of Smith Mills Schrock Blades, P.C., Cedar Rapids, for appellant.

Vanessa Chavez, City Attorney, and Patricia G. Kropf (argued), Assistant City Attorney, Cedar Rapids, for appellee.

**May, Justice.**

Iowa Code section 80F.1 is entitled "Peace officer, public safety, and emergency personnel bill of rights." Consistent with its title, section 80F.1 provides enhanced rights for police officers and other first responders. Like all rights, though, section 80F.1's rights are not limitless. They have boundaries.

Here we consider the boundaries of two sections, 80F.1(3) and 80F.1(9). Both provide rights to an officer who is the subject of an internal investigation because of a complaint that may lead to discipline. Section 80F.1(3) entitles the officer to immediate written notification of the results of the investigation. And section 80F.1(9) entitles the officer to certain investigative materials—copies of any witness statements and the complete investigative agency's report—if the investigation results in the imposition of discipline.

In this case, the question is *when* an officer may become entitled to these materials. Based on our study of the statutory text, we conclude section 80F.1(3) does not require the employing agency to announce the results of the investigation until the agency decides what those results are—including its determination of whether discipline is warranted. Similarly, because section 80F.1(9) only applies "if" the officer is actually disciplined, section 80F.1(9) cannot provide an officer with rights before the agency decides whether discipline will be imposed.

The district court was correct to reject the officer's contrary arguments. We affirm.

**I. Procedural and Factual Background.**

**A. Officer Smith and the City of Cedar Rapids.** In 2009, Antoine Smith (Smith) was hired as a police officer for the City of Cedar Rapids (City). Upon his

hiring, Smith had his official photo taken. Smith's official photo was placed on display alongside photos of other employees in a secure-access atrium.

In February 2023, the Cedar Rapids Police Department (department) informed Smith that it was updating the displayed photos. But Smith did not want his photo retaken and displayed. And Smith raised those concerns with his superiors.

In March, Smith shared his concerns with his captain. The captain told Smith that he had to get a new photo taken—although it was still being discussed whether that photo would be displayed. Smith again explained that he did not want his photo retaken or displayed. The captain ordered Smith to get his new official photo taken within five days. Smith responded that he would not comply with that order. So the captain filed a complaint against Smith.

In response to the complaint, the department's interim chief (chief) ordered a formal administrative investigation. A "formal administrative investigation" means "an investigative process" that involves "questioning of an officer" and "gather[ing] evidence to determine the merit of a complaint" that may result in discipline. Iowa Code § 80F.1(1)(*c*) (2023). On April 1, Smith received notice of the investigation. The notice said that Smith was being investigated because he refused a direct order to get his photo taken.

A few days later, Smith received notice that he would be interviewed on April 13. This notice stated, "If the allegations are founded, your actions could constitute violations of [department policy]." The notice also listed two "possible" code of conduct violations.

A lieutenant conducted Smith's interview. Smith's counsel was also present. During the interview, Smith agreed that his refusal to follow the captain's order was a violation of the department's code of conduct for officers.

A few days later, the lieutenant submitted an investigative report to the department's disciplinary board. In the report, the lieutenant "[s]ustained" two findings of code of conduct violations.

About a week later, Smith's counsel asked the department for the results of the investigation pursuant to Iowa Code section 80F.1(3). Smith's counsel also asked for copies of any witness statements, the complete investigative report, and any recommendations or proposed discipline pursuant to Iowa Code section 80F.1(9).

The lieutenant denied these requests. In his email to Smith's counsel, the lieutenant explained that the investigation "is not considered complete as [the disciplinary board] can request further follow up if needed." The lieutenant added, however, that if the investigation results in discipline, "[a]ny further documentation will be provided in compliance with 80F.1(9)."

The "disciplinary board" mentioned above consists of several of the department's captains. About a week after the lieutenant submitted his report, the disciplinary board authored its own memorandum. The board noted that it "concur[red]" with the lieutenant's findings of violations by Smith. The board also concluded that there were "no mitigating or aggravating factors to consider in the final recommendation." Ultimately, the board recommended to the chief that Smith should receive a suspension for ten hours without pay. The board also thought that Smith should be required to get his new official photo taken within ten days of receiving the department's final determination.

The chief reviewed the board's memorandum and the investigative report. At the top of the board's memorandum, next to his name, the chief wrote, "concur 05-12-23."

On May 18, the department notified Smith that a pre-disciplinary hearing would take place on May 25. The notice informed Smith that he had been found in violation of two of the department's code of conduct policies, that his violations could result in a suspension of ten to thirty hours without pay, and that the disciplinary board recommended Smith be suspended for ten hours without pay. The notice stated:

> [The] pre-disciplinary hearing affords you the opportunity to present whatever information you believe is relevant to these issues and otherwise be heard before a decision regarding your discipline is made. You are advised that some form of discipline may be taken against you as a result of these matters, up to and including termination.

Later that day, Smith's counsel acknowledged receipt of the notice. Smith's counsel again requested that the department produce the materials previously requested: the investigation results, any witness statements, the complete investigative report, and any recommendations or proposed discipline. The department responded that "no further information will be released at this time" because the "investigation has not resulted in any disciplinary action."

The pre-disciplinary hearing was held on May 25. In attendance were the chief, the lieutenant, Smith, and Smith's counsel. Smith's counsel objected to the proceeding because Smith had not received the requested documents and had not had an opportunity to respond to the investigative report. Smith's counsel also requested a continuance of the hearing. But the department elected to proceed with the hearing.

On May 31, the chief suspended Smith for ten hours without pay and required Smith to get his new official photo taken. The department then provided its "complete investigation" to Smith.

Smith's new official photo was taken and displayed. And Smith served the ten-hour suspension without pay. In mid-July, Smith brought this action.

**B. This Action.** Smith's petition alleged several violations of section 80F.1. Following discovery, the parties filed cross motions for summary judgment. Both motions raised the issue of whether the City violated sections 80F.1(3) or 80F.1(9) by failing to timely provide Smith with its investigative materials, including the results of the investigation. Smith contended that the materials should have been provided on April 18, when the lieutenant submitted his investigative report to the department's disciplinary board. Alternatively, Smith contended that the materials should have at least been provided prior to the May 25 pre-disciplinary hearing so that he and his counsel could have been more fully prepared to participate in that hearing. The City disagreed. In the City's view, it had no duty to produce the materials until May 31, when the chief made a final determination that the complaint against Smith was meritorious and that discipline would be imposed.

The district court granted the City's motion and denied Smith's. Smith appeals.

**II. Merits.**

We begin our merits discussion with a brief overview of the relevant rights provided by section 80F.1. Then we determine whether the district court correctly interpreted section 80F.1 when ruling on the parties' summary judgment motions. Our review is for correction of errors at law. *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021).

**A. Overview.** As mentioned, section 80F.1 provides police officers "with certain rights and procedural protections" related to investigations into complaints of alleged misconduct. *Dautovic v. Bradshaw*, No. 09–1763, 2011 WL

1005432, at *1 (Iowa Ct. App. Mar. 21, 2011); *see generally Chandler v. Iowa Dep't of Corr.*, ___ N.W.3d ___, 2025 WL 568665, at *1 (Iowa Feb. 21, 2025) (discussing the history of section 80F.1).

Some complaints and investigations are informal. These generally relate to "minor infractions of agency rules which will not result in removal, discharge, suspension, or other disciplinary action against the officer." Iowa Code § 80F.1(1)(*e*); *see also id.* § 80F.1(1)(*d*) (defining "informal inquiry").

Other complaints and investigations are formal. These relate to more severe infractions that may result in "removal, discharge, or suspension, or other disciplinary action." *Id.* §§ 80F.1(1)(*c*) (defining "formal administrative investigation"), .1(1)(*b*) (defining "complaint" as a "formal written allegation signed by the complainant"). Smith's investigation was a formal administrative investigation.

During a formal administrative investigation, the agency gathers evidence to determine whether the complaint against the officer has merit. The officer may be interviewed. *See id.* §§ 80F.1(1)(*e*) (defining "interview"), .1(5)–(8), (10)–(11) (describing protections concerning the interview). Witness statements may be taken. One or more investigative reports will be prepared. *See id.* § 80F.1(9).

The entire formal administrative investigation must be "commenced and completed in a reasonable period of time." *Id.* § 80F.1(3). When the investigation is completed, the officer must be "immediately [and automatically] notified in writing of the results," whether good or bad. *Id.* If the investigation "results in the removal, discharge, or suspension, or other disciplinary action against an officer," the officer may request copies of any witness statements and the "complete investigative agency's report," and these materials must then be provided to the officer in a timely manner. *Id.* § 80F.1(9).

In addition to the statutory requirements just described, due process also imposes requirements on employing agencies. Before an agency can impose discipline, due process requires the agency to provide the officer with notice of the charges against her, an explanation of the agency's evidence, and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985). This opportunity to respond is sometimes called a *Loudermill* hearing. Here, though, we follow the department's practice by referring to it as a pre-disciplinary hearing. As mentioned, Smith's pre-disciplinary hearing occurred on May 25, and then the department made its decision concerning discipline on May 31.

**B. Analysis.** With this background in mind, we turn to the two questions presented in Smith's appeal: (1) Was the district court correct in concluding that the City (acting through the department) did not violate section 80F.1(9) by refusing to provide the investigative materials requested by Smith's counsel prior to the department's imposition of discipline on May 31? and (2) Was the district court correct in concluding the City did not violate section 80F.1(3) through the same conduct?

1. *Section 80F.1(9).* We start our analysis with section 80F.1(9), which provides:

> If a formal administrative investigation results in the removal, discharge, or suspension, or other disciplinary action against an officer, copies of any witness statements and the complete investigative agency's report shall be timely provided to the officer upon the request of the officer or the officer's legal counsel upon request at the completion of the investigation.

Iowa Code § 80F.1(9).

As its plain text shows, although section 80F.1(9) sometimes provides officers with a right to certain investigative materials ("witness statements and

the complete investigative agency's report"), that right is conditional. *Id.* It is conditioned on the imposition of discipline, be it "removal," "discharge," "suspension," or something else. *Id.* Unless and until discipline is imposed, section 80F.1(9) provides no rights. It follows that section 80F.1(9) provides no rights until the agency decides *whether* discipline will be imposed.

In this case, then, Smith had no rights under section 80F.1(9) until after May 31, when the City decided to impose discipline. So, like the district court, we conclude that the City did not violate section 80F.1(9) by waiting until after its May 31 disciplinary decision to provide Smith with its investigative materials.

We recognize Smith's point that it could be beneficial for accused officers and their attorneys to have access to the agency's full investigative file prior to the pre-disciplinary hearing (i.e., *Loudermill* hearing) required by due process. But Smith does not cite, and we have not found, any authority suggesting that due process requires the agency to provide its full investigative file prior to the hearing. Moreover, as just explained, the plain language of section 80F.1(9) makes it clear that the agency has no obligation to provide those materials until after a disciplinary decision is made and, therefore, after the pre-disciplinary hearing. We are bound by that plain statutory language. Only the legislature can revise it.

So we must agree with the district court that the City did not violate section 80F.1(9). We affirm that decision.

2. *Section 80F.1(3).* We turn next to section 80F.1(3), which provides:

> A formal administrative investigation of an officer shall be commenced and completed in a reasonable period of time. An officer shall be immediately notified in writing of the results of the investigation when the investigation is completed.

Iowa Code § 80F.1(3).

Here, the question is when Smith was entitled to be "notified" of "the results of the investigation." *Id.* The answer depends in part on what the Code means by "the results of the investigation." *Id.* As mentioned, the Code defines a "formal administrative investigation" as a process for resolving a complaint that may result in discipline for the officer. *Id.* § 80F.1(1)(*c*). This implies that "the results" of the investigation must include a determination of whether the complaint will actually result in discipline or not. *Id.* § 80F.1(3); *Result, Webster's Third New International Dictionary* 1937 (unabr. ed. 2002) ("[A] decision or resolution of a deliberative or legislative body."); *id.* ("[S]omething obtained, achieved, or brought about by calculation, investigation, or similar activity."); *Result, New Oxford American Dictionary* 1489 (3d ed. 2010) ("[A] consequence, effect, or outcome of something."); *see also Result, Black's Law Dictionary* 1576 (12th ed. 2024) ("A consequence, effect, or conclusion."). And so the officer cannot be entitled to the "results" of the investigation before that determination is made. Iowa Code § 80F.1(3).

This conclusion makes even more sense when section 80F.1(3) is considered in tandem with section 80F.1(9). Both sections deal with formal administrative investigations. And both sections provide officers with rights "when the investigation is completed," *id.* § 80F.1(3), or as section 80F.1(9) puts it, "at the completion of the investigation," *id.* § 80F.1(9). This parallel phrasing suggests that the rights under both sections are triggered at the same time. As explained, though, the rights under section 80F.1(9) cannot be triggered until the agency decides whether discipline will be imposed. This implies that the rights under section 80F.1(3) are not triggered until the discipline decision is made.

We have considered Smith's contrary view that the investigation is complete—and its results must be disclosed—sometime before a decision about discipline is made. As explained, we don't think that works because the results of the investigation *include* the disciplinary decision itself.

Also, when we read section 80F.1(3) as a whole, it seems odd to separate the investigation from the disciplinary decision. Consider the first sentence of section 80F.1(3), which requires the "investigation" to be "completed in a reasonable period of time." *Id.* § 80F.1(3). This time constraint is most beneficial to the officer if the entire complaint process—including the disciplinary decision—is part of the "investigation" that must be "completed in a reasonable period of time." *Id.* But if the disciplinary decision isn't part of the investigation, then there is no time constraint on that decision. If the agency is busy, neglectful, or vengeful, the decision might be put off for months or longer. Delay of that sort could deplete the reasonable-time requirement of any practical benefit. *See Randolph v. Aidan, LLC*, 6 N.W.3d 304, 311 (Iowa 2024) ("[W]e avoid interpretations that would leave statutory words without meaningful effect.").

Plus, as already suggested, separating an agency's investigation from its disciplinary decision could lead to difficult line-drawing problems. *See Van Baale v. City of Des Moines*, 550 N.W.2d 153, 155 (Iowa 1996) ("[A] statute should be given a sensible, practical, workable, and logical construction."), *abrogated on other grounds by Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), *overruled by Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023). Take the current case as an example: Smith suggests that the department's fact-gathering—and thus its investigation—ended with the lieutenant's report on May 18. Yet the very point of the May 25 pre-disciplinary hearing was for Smith to have an opportunity to provide his side of the story. So Smith's explanation on May 25 might also have

been part of the agency's fact-gathering. Moreover, the information Smith provided in that May 25 hearing could have opened new avenues for additional investigation *beyond* May 25. So when, exactly, did the investigation end? It's hard to say if, as the plaintiff suggests, the disciplinary decision is separate from the investigation. Conversely, joining the investigation process with its final step—the disciplinary decision—leads to a rule that's easy to apply: When the agency makes its decision on discipline, its investigation is complete. Because that rule fits best with the statutory text, we adopt it.

The district court was correct to find that the City did not violate section 80F.1(3). We affirm that decision as well.

**III. Disposition.**

The district court was correct to grant the City's summary judgment motion.

**Affirmed.**