# IN THE COURT OF APPEALS OF IOWA

No. 24-0737
Filed October 1, 2025

**EMILIO M. PUENTE,**
        Plaintiff-Appellant,

**vs.**

**CITY OF IOWA CITY,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever, Judge.

A former police officer who contests his resignation appeals the district court's rulings denying relief on his claims. **AFFIRMED.**

Peter M. Sand (argued), West Des Moines, and Ryan J. Ellis of Ellis Law Offices, PC, Indianola, for appellant.

Elizabeth J. Craig (argued) and Jennifer L. Schwickerath, Assistant City Attorneys, Iowa City, for appellee.

Heard at oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

Faced with imminent termination for two use-of-force incidents, former Iowa City police officer Emilio Puente resigned from his employment. He changed his mind the next day and asked to rescind his letter of resignation, but the chief of police refused. Puente filed this lawsuit against the City of Iowa City, asserting a claim for constructive discharge in violation of public policy and seeking a declaration that his resignation was void because it was given under duress.

The district court dismissed the constructive-discharge claim at summary judgment, finding Puente's exclusive remedy for that theory was a civil service appeal under Iowa Code section 400.20 (2022). The court also ruled "that to the extent Puente's involuntary resignation was the product of actions attributable to the City, it is barred under the exclusive remedy doctrine." Puente retooled his resignation claim for trial, arguing to the jury that he lacked the capacity to resign and that he rescinded the resignation before it was accepted. At the close of Puente's evidence, the court granted the City's motion for directed verdict on the lack-of-capacity claim. The sole question left for the jury was whether the City accepted Puente's letter before his attempted withdrawal. The jury found it did. Puente appeals.

## I.     Factual Background

Emilio Puente began working as an Iowa City police officer in April 2019. On November 21, 2021, he was injured on the job when an uncooperative arrestee kicked him in the leg. A supervisor accompanied Puente to the emergency room, where he was treated for his pain and discharged for follow-up at an occupational medicine clinic. Two days later, Puente was summoned to the police department

and notified he was the subject of an internal affairs investigation that had been opened before his injury. The investigation concerned arrests that Puente had made on October 31 and November 12, both of which had drawn complaints from the public because of his use of force.

Puente sat for two administrative interviews regarding these incidents. Meanwhile, he requested and received temporary disability benefits for his November leg injury. On January 31, 2022, Police Chief Dustin Liston notified Puente of his "preliminarily determination" that Puente had violated department policies and was "unsuitable or unfit for employment." Puente attended a final pre-disciplinary hearing on February 3, accompanied by union representatives Colin Fowler and Mike Smithey. During that meeting, he asked Chief Liston to excuse his misconduct and allow him to keep his job. The chief informed Puente that he would make a disciplinary decision by the end of the day.

After the hearing, Puente conferred with Fowler and Smithey. They advised him that "the chief has decided to terminate" and that "this was the time allowed to resign." Fowler and Smithey explained that a voluntary resignation might allow Puente to avoid decertification, preserving his chances of future employment in law enforcement. Puente felt he "had no other option" but to resign. So he signed a letter of resignation, left it with his union representatives, and cleaned out his locker. Fowler delivered the letter to Chief Liston, who signed it with an annotation stating, "Accepted 02/03/22."

That evening, Puente had a change of heart. He texted Fowler the next day, February 4, stating his decision had been "too emotional" and that "resigning might have been the wrong choice." Fowler asked Chief Liston if Puente could

rescind his resignation, but the chief denied the request. Chief Liston later testified that he considered Puente's resignation final on February 3 and that, if Puente had not resigned, he would have been fired.

## II.    Procedural History

In April 2023, Puente filed a complaint with the Iowa City Civil Service Commission, challenging Chief Liston's refusal to reinstate his employment. The commission dismissed Puente's complaint as untimely.[1]  Meanwhile, Puente also filed a civil action against the City, alleging his disciplinary process was in retaliation for his disability claim and that his letter of resignation was given under duress.  Puente's petition sought damages under a theory of "retaliatory constructive discharge."  It also sought a declaration that his resignation was "null and void."

The City moved for summary judgment, arguing in part that Puente's claims were barred by the civil service remedies available under Iowa Code chapter 400. The district court granted the City's motion on Puente's constructive-discharge theory, finding "chapter 400 is the exclusive remedy" for such a claim.  It declined to dismiss the rest of Puente's petition, concluding his rescission theory was distinguishable from his constructive-discharge claim and that a genuine factual dispute remained as to whether the City accepted Puente's resignation before he tried to withdraw it.  However, the court noted that if Puente sought to invalidate

---

[1] Puente appealed the civil service commission's decision by filing a petition for judicial review, which the district court dismissed for lack of jurisdiction.  The Iowa Supreme Court reversed and remanded for a merits review of Puente's administrative appeal. *Puente v. Civ. Serv. Comm'n of Iowa City*, 7 N.W.3d 15, 17 (Iowa 2024).  The civil service case was unresolved when this appeal was filed.

his resignation based on "actions attributable to the City," then that claim would also be foreclosed under the exclusive remedy doctrine. The court later clarified this included Puente's theory that his "resignation was offered under duress."

Puente's claims for declaratory relief proceeded to a jury trial, where his legal theory shifted. Barred from introducing evidence on his allegations of duress, Puente sought to prove that he lacked the mental capacity to resign his employment. He testified that his leg pain and medication interfered with his judgment on the day of his pre-disciplinary hearing and that, when "the fog in [his] brain cleared up," he realized that he made the wrong decision. He also contested the timing of the City's acceptance, highlighting a stamp on his resignation letter that read, "Received Feb 04 2022 Human Resources."

At the close of Puente's case, the City moved for a directed verdict on both issues. The district court agreed that Puente had failed to present substantial evidence of incapacity, but it declined to grant the City's motion as to Puente's rescission theory. The case was submitted to the jury on a single question: "Was Emilio Puente's resignation accepted by the City of Iowa City before he attempted to withdraw it?" The jury answered "yes," and the district court entered judgment for the City.

Puente now appeals, challenging the district court's conclusion that a civil service appeal was the exclusive remedy for his allegations of retaliatory discharge and resignation under duress. He tangentially challenges the directed verdict on the lack-of-capacity claim.[2]

---

[2] Puente raises an additional issue that we do not address in substance—whether the human resources stamp on his letter of resignation "should be considered

### III.    Standard of Review

The district court addressed the exclusive remedy question in its summary judgment ruling, which we review for the correction of errors at law.  *Walsh v. Wahlert*, 913 N.W.2d 517, 521 (Iowa 2018).  The court's decision to direct a verdict is also reviewed for the correction of errors at law.  *Determan v. Johnson*, 613 N.W.2d 259, 261 (Iowa 2000).

### IV.    Analysis

Iowa Code chapter 400 establishes a civil service system governing the appointment, promotion, and removal of certain municipal employees—including police officers in cities with a population of more than eight thousand.  *See* Iowa Code § 400.6.  Among other protections provided by the statute, civil service employees may not be "removed, discharged, demoted, or suspended arbitrarily." *Id*. § 400.18(1).  A police officer who suffers one of those sanctions can appeal the adverse decision to the city's civil service commission, which "has jurisdiction to hear and determine matters involving the rights of civil service employees under this chapter."  *Id*. §§ 400.20, 400.27(1).  A final decision of the commission can then be appealed to district court.  *Id.* § 400.27(3).

Because it "creates a new right to continued employment (subject only to removal for cause) that did not exist at common law," our supreme court has deemed chapter 400 "the exclusive means of challenging the arbitrariness of a civil

---

dispositive" of its acceptance date as a matter of law.  Puente concedes he "could find no guidance" on this question and so he declined to seek an instruction or move for a directed verdict.  That is fatal to his claim of error.  "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

service employee's discharge." *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156 (Iowa 1996), *abrogated in part by Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), *overruled by Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023). Whereas at-will employees who are removed for allegedly unlawful reasons can sue for common law relief, *see Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988), civil service employees generally must rely on the administrative appeal process to challenge an adverse employment decision, *Van Baale*, 550 N.W.2d at 156.

In *Van Baale*, a discharged police officer sued the City of Des Moines for "breach of oral contract, promissory estoppel, and negligence," arguing his termination was contrary to a supervisor's assurance that pleading guilty to pending criminal charges would allow the officer to keep his job. 550 N.W.2d at 154–55. The supreme court affirmed dismissal of those claims, concluding a civil service appeal was the only avenue for relief. *Id.* at 156 (distinguishing the officer's claim for intentional infliction of emotional distress, which sought to remedy a harm "that differs from the rights protected by the civil service statute"). Later, in *Walsh*, the court extended that reasoning to state merit-system employees. 913 N.W.2d at 526. Although the plaintiff in that case sued for wrongful termination in violation of public policy—"a common law claim not raised in *Van Baale*"—the court found that theory foreclosed by the grievance and discipline-resolution procedures under Iowa Code section 8A.415. *Id.*

An appeal under chapter 400 remains a civil servant's exclusive remedy even in cases of constructive discharge—that is, where an employee quits because of allegedly oppressive circumstances. *See Haberer v. Woodbury Cnty.*,

560 N.W.2d 571, 574 (Iowa 1997) (noting "a constructive discharge alleges the loss of employment attributable to the actions of an employer" and so "such a discharge is included in the term 'removal'"). However, an exception exists when the employee's resignation is challenged for reasons not attributable to the employer. For example, civil service employees seeking to invalidate a resignation based on a lack of capacity may pursue declaratory relief in district court. *See Schulz v. City of Davenport*, 444 N.W.2d 479, 482 (Iowa 1989) (finding the district court had jurisdiction to hear a police officer's claim "that he lacked the mental capacity required to execute a legally effective resignation").

### A.     Constructive Discharge

Applying the exclusive remedy principles from *Van Baale* and its progeny, the district court found the City was entitled to judgment as a matter of law on Puente's claim for retaliatory constructive discharge. It reasoned that, under *Van Baale*, "chapter 400 is the exclusive remedy for constructive discharge claims" brought by civil service employees. Puente does not dispute that proposition. Instead, he challenges *Van Baale* as "wrongly decided" and asserts it is time to "chart another course in the law."

Unfortunately, Puente's arguments have reached the wrong ears. This court may not disregard binding precedent. *See Bomgaars v. State*, 967 N.W.2d 41, 48 n.4 (Iowa 2021) (explaining "lower courts in Iowa are [not] at liberty to anticipatorily overrule this court's precedent"); *Nationwide Agribusiness Ins. Co. v. PGI Int'l*, 882 N.W.2d 512, 518 n.4 (Iowa Ct. App. 2016) (noting the Iowa Court of Appeals is "not . . . at liberty to overturn Iowa Supreme Court precedent."). *Van Baale's* exclusive-remedy doctrine remains the law in Iowa. *See Halbur v. Larson*,

14 N.W.3d 363, 374 (Iowa 2024) (applying *Van Baale* and finding a state whistleblower's common law wrongful discharge claim preempted); *Walsh*, 913 N.W.2d at 526 (same). The only question is whether Puente's retaliatory constructive-discharge claim is distinguishable.

Puente cites three reasons why we should find a different result here. First, he contends that *Van Baale* and *Walsh* "are actually not cases about how to apply 'exclusive remedy' principles" but rather "straightforward applications of the doctrine of *res judicata*." He seems to argue that the common-law claims in *Van Baale* and *Walsh* failed in part because they had been raised and decided in proceedings before the civil service commission. But neither decision tied its preemption analysis to the posture of the administrative process. Rather, in both cases, the supreme court's holding was based on the fact that the employee's common-law claims sought to address the same alleged harm for which the legislature had supplied a remedy under a comprehensive statutory scheme. *See Van Baale*, 550 N.W.2d at 156; *Walsh*, 913 N.W.2d at 526.

Second, Puente contends that *Van Baale* and *Walsh* are distinguishable because the employees in those cases were "actually terminated." He asserts constructive discharge "just doesn't fit" the jurisdictional language of Iowa Code section 400.20, which covers the "removal, discharge, demotion, or suspension" of civil service employees. Our supreme court concluded otherwise in construing the word "removal" in an analogous statute for county employees. *Haberer*, 560 N.W.2d at 574 (citing Iowa Code § 341A.12). There is no reason to think the legislature intended a different meaning when it used the same language in section 400.20. *See Chandler v. Iowa Dep't of Corrs.*, 17 N.W.3d 645, 648

(Iowa 2025) ("When interpreting the meaning of statutory language, we consider the language's relationship not only to other provisions of the same statute but also to other provisions of related statutes.").

Third, Puente argues that, unlike his claim for retaliatory discharge, the officer in *Van Baale* brought claims alleging an "arbitrary" termination. Puente is correct that chapter 400 is not the exclusive remedy for harms other than arbitrary discharge. *See Van Baale*, 550 N.W.2d at 156. But in *Walsh*, the court squarely rejected an attempt to differentiate a claim for "wrongful termination in violation of public policy" from the arbitrary-discharge claims at issue in *Van Baale*. *See Walsh*, 913 N.W.2d at 526 ("[W]e find the case indistinguishable."). Puente's claim is wrongful discharge by another name. He asserts he was constructively removed in retaliation for exercising his legally protected rights—an arbitrary ground not permitted by Iowa Code section 400.18. The district court correctly granted summary judgment on Puente's constructive-discharge claim.

## B.      Duress

Puente also challenges the district court's summary judgment ruling "that to the extent [his] allegedly involuntary resignation was the product of actions attributable to the City, it is barred under the exclusive remedy doctrine." He argues the supreme court's decision in *Schulz* authorized a "free-standing" claim—outside the civil service commission's jurisdiction—for rescission based on duress. We disagree.

The police officer in *Schulz* brought an equitable action challenging the validity of his resignation because of an alleged lack of "mental capacity." 444 N.W.2d at 480. The district court found the officer's only relief was with the civil

service commission, but the supreme court reversed. *Id.* at 481–82. The court reasoned that because "an employee resignation . . . is contractual in nature and is ineffectual without the requisite volition," the officer's claim fell within the general jurisdiction of the district court. *Id.* at 482. In reaching that conclusion, the court distinguished cases involving "coerced resignations." *Id.* at 481. It suggested a challenge to a "resignation [that] was the product of any action by the employer" would "present an arguable claim of a constructive discharge which might be appealed under section 400.20." *Id.*

Puente argues these latter points were dicta because *Schulz* did not involve a duress claim. But *Schulz* does not stand alone. As we mentioned above, the court in *Haberer* found a deputy's claim that he was forced to resign because of workplace stressors was within the commission's authority to review "removals" from employment. 560 N.W.2d at 573–74. Although *Haberer* asked whether a civil service appeal was an available remedy, not an exclusive one, we must read its holding in conjunction with *Van Baale*. A civil service employee's challenge to a "coerced" resignation is within the jurisdiction of the civil service commission. *Id.* (explaining "the loss of employment attributable to the actions of an employer . . . is included in the term 'removal'"). And where the legislature has given the civil service commission power to remedy a challenged removal, that remedy is exclusive. *Van Baale*, 550 N.W.2d at 156; *Walsh*, 913 N.W.2d at 526.

Puente tries to distinguish his duress theory, noting that "there is no evidence in the record that the chief ever told him to resign" and that it is possible the city "*unintentionally* contribute[d] to" his coerced resignation. But the argument splits hairs. Just like the deputy in *Haberer*, Puente sought to prove that he was

forced to tender his resignation due to stressful circumstances created by the City—particularly, a time-pressured ultimatum to quit or face termination. Puente was entitled to bring that claim to the civil service commission, *Haberer*, 560 N.W.2d at 574, and the commission had authority to reinstate Puente's employment, *see* Iowa Code § 400.27. So the district court did not err in concluding that chapter 400 provided Puente's exclusive remedy.

## C.    Lack of Capacity

Puente makes a half-hearted challenge to the district court's grant of directed verdict on his claim that he lacked the capacity to resign from his position. He argues the court "took the view that the evidence would have to support a complete lack of capacity on the part of Puente before the claim could be submitted." We do not read the court's ruling so broadly.

Viewing the evidence in the light most favorable to Puente, *see Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 106 (Iowa 1995), the district court found:

> What I have is that the Plaintiff was in a lot of pain and on a lot of medication, that the letter [of resignation] was composed by someone else, that there were no discussions regarding a number of things which we would all consider to be important things to discuss when entering into a decision. But the failure to discuss important things does not in and of itself demonstrate that someone lacked the capacity to enter into a contract, which is a standard that is different than being confused or different than maybe not necessarily thinking about all of the different terms in detail.

The district court correctly concluded that more is needed to establish a lack of capacity to contract. There must be proof that not only was the party "of unsound mind" when the contract was made "but that this unsoundness was such that he had no reasonable perception of the nature and terms of the contract." *Sjulin v.*

*Clifton Furniture Co.*, 41 N.W.2d 721, 723 (Iowa 1950). Puente argues that he "offered evidence of his inability to think straight that day, his high level of anxiety, his medications, [and] his uncertainties regarding many related issues." But there was no evidence those conditions affected Puente's "mental capacity to the extent he did not understand the nature of the instrument he was signing." *Peoples Bank & Tr. Co. v. Lala*, 392 N.W.2d 179, 184 (Iowa Ct. App. 1986). Because a reasonable mind would not accept Puente's evidence as adequate, *see Determan*, 613 N.W.2d at 261, we affirm the district court's grant of directed verdict on the lack-of-capacity claim.

**AFFIRMED.**